# Dodson Coal Co. *v.* New Boston Land Co., Appellant.

*Practice, C. P.—Trial—Construction of contract—Submission to jury—Harmless error.*

1. Where it is the duty of the trial judge to direct a verdict for plaintiff on the written evidence, no harm is done to defendant, if

the case is submitted to the jury, and they return a verdict for plaintiff.

*Contract—Discharge of debt—Delivery of property—Failure to perform.*

2. Where a debt may be discharged by the delivery of certain property within a specified time, a failure to deliver it renders the debtor liable to pay in money, and this is especially so where the obligation to pay on failure to deliver the property, is expressly stipulated in the contract.

3. A party cannot escape the performance of an agreement to deliver property at a specific time because of an undisclosed ability on his part to perform it.

*Practice, C. P.—Trial—Charge—Commenting on letters—Points —Erroneous assumption of facts.*

4. It is proper for the trial judge in the course of his charge, and when giving additional instructions, to comment upon letters which are in evidence.

5. A refusal of a point is not error, where the point contains an unwarranted assumption that the parties had an understanding different from that embodied in their agreement as shown by letters and found by the jury.

6. A point cannot be affirmed where it is founded on an erroneous assumption.

Argued January 17, 1923. Appeal, No. 120, Jan. T., 1923, by defendant, from judgment of C. P. No. 5, Phila. Co., March T., 1920, No. 3773, on verdict for plaintiff, in case of Dodson Coal Co., Inc., v. New Boston Land Co. Before MOSCHZISKER, C. J., WALLING, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for money alleged to be due on contract. Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $208,248.59. Defendant appealed.

*Errors assigned* were various instructions and rulings on evidence, appearing by opinion of Supreme Court, quoting record.

*J. Claude Bedford,* with him *Otto E. Farquhar* and *George M. Roads,* for appellant, cited: Mead, etc., Speer Co. v. Krimm, 43 Pa. Superior Ct. 376; Swing v. Walker, 27 Pa. Superior Ct. 366; Rankin v. Trust Co., 189 U. S. 243; Lacy v. Green, 84 Pa. 514.

*Henry S. Drinker, Jr.* with him *Thomas Reath, Jr.,* for appellee, cited: Berg Co. v. Thomas, 256 Pa. 584; Roberts v. Beatty, 2 P. & W. 63; Stewart v. Morrow, 1 Grant 204; Goodwin v. Heckler, 252 Pa. 332; Butler v. School Dist., 149 Pa. 351; Rankin v. Woodward, 3 P. & W. 48; Miller v. Philips, 31 Pa. 218; Publishing Co. v. Aldine Press, 126 Pa. 347; Sikorski v. R. R., 260 Pa. 243; Lieberman v. Colahan, 267 Pa. 102.

OPINION BY MR. JUSTICE WALLING, February 12, 1923:

This action is by a lessee against the lessor for the appraised value of certain machinery left in a coal mine. The plaintiff, Dodson Coal Company, Inc., was lessee of a certain coal mine in Mahanoy Township, Schuylkill County, of which the New Boston Land Company, defendant, was the lessor. The lease, which was for a thirty-year term, expired December 31, 1917. The twelfth section of the lease, inter alia, provides: "And it is further agreed that at the final end and determination of this lease, each of the parties hereto shall, without delay and by the method fully set forth and provided for in the sixteenth section, appoint one disinterested person for the purpose of appraising in detail the value of all such property and improvements, paid for by the lessees, on the herein demised premises, and such valuation being definitely determined, the parties of the first part, their heirs, executors, administrators or assigns, shall have the option of taking such property or any portion thereof which shall become the absolute property of said parties of the first part upon payment by them of such adjudged value; but if the said parties of the first part shall decide not to take such property or any por-

tion thereof at such valuation, then and in that case the parties of the second part, their heirs, executors, administrators, or assigns, shall have four months from such declared decision in which to remove their said property from the above demised premises." Pursuant thereto appraisers duly chosen made a detailed inventory and appraisement of all the lessee's machinery, etc., connected with the mine, which they announced February 8, 1918, the total valuation thereof being $698,753.45. After the expiration of the old lease defendant, through a new lessee, continued to operate the mine with plaintiff's machinery and appliances, without presently electing to accept or reject the appraised property. But in April, 1918, defendant, as part of an agreement, elected to accept and pay for certain of the appraised property amounting to $353,613.62.

Defendant also submitted to plaintiff, inter alia, a list of appraised property called "Schedule C," amounting to $174,706.19, with an annotation thereon as follows: "Ultimate Rejections. To be removed as soon as we can liberate them, by reason of new installations." The latter clause refers to electric machinery which defendant was then placing in the mine, at an expense of over $300,000, but the installation thereof was progressing slowly; meantime, defendant was obliged to use plaintiff's old machinery or close the mine. The old machinery, however, was depreciating in value and plaintiff objected to its continued use in the mine. Thereupon, the presidents of the two companies (plaintiff and defendant) met on April 9, 1918, and entered into an agreement for the disposition of the Schedule C property. On the next day (April 10th) plaintiff's president wrote defendant a letter setting forth his understanding of the agreement, to which defendant's president replied two days later. So far as disclosed by the two letters, both understood the agreement as to Schedule C alike, in effect, that defendant should release the property to plaintiff before October 1, 1918, and pay the latter at the rate of ten per

cent per annum for its use from January 1, 1918, until released, and pay plaintiff the appraised value for all of such property not turned over to it before that date; the property within the mine to be delivered at its mouth and that outside to be collected by defendant at some convenient point, of all of which plaintiff was to be notified. The letter of April 12th, from defendant's president, explains the agreement as follows: "Schedule 'C': What we cannot turn over of this schedule by or before October 1st proxo, we shall then pay for, plus interest at 10% per annum, to cover use and depreciation from January 1st to October 1st. This schedule amounts to $174,706.19. On scheduled items which are released we shall pay interest, as above, from January 1st to date of release. We are willing to grant you the eight months for removal as asked; provided that we are released from all responsibility after removal to the place where they shall be stored. We shall place on the surface all items located inside and place all outside items where your representative can get them—giving you ample notice to enable you to have your representatives present during removal." Within the specified time, only two of the articles named in Schedule C, of the appraised value of $14,676, were released to plaintiff and the balance remained in defendant's possession on and after October 1st, with no notice, tender, or offer of delivery of the same or any part thereof. Defendant's president, however, on September 30th, wrote plaintiff giving an explanation of the delay and saying: "We can give you a lot of stuff for immediate removal [not describing or tendering any] but it may be two weeks yet before we can shut down the boilers. Our correspondence named October 1st as the date we were to notify you that all was free. I am sorry. Do you propose to hold that date in regard to everything that is not on the bank awaiting shipment?" Plaintiff declined to extend the time and on October 2d, sent defendant a bill for the appraised value of the unreleased property, with inter-

est, etc.  The first and only offer to turn over the property in controversy to plaintiff was made by defendant on November 29, 1918, which was refused, followed by this suit for its value.  The affidavit of defense sets up, inter alia, that the letters of April 10th and 12th did not contain the entire contract, which contemplated the temporary use, not the ultimate purchase of the articles enumerated in Schedule C; further, that defendant on October 1st could have turned over to plaintiff all of said articles, except a small number of the value of $6,-686.69.  The trial judge submitted the case, including the construction of the contract, to the jury, who found for the plaintiff for the appraised value of all the property enumerated in Schedule C, except the two articles returned to plaintiff.  Judgment having been entered on the verdict, defendant brought this appeal.

The case was tried with great care and we find no reason to disturb the judgment.  Allowing the jury to construe the contract, whether right or not, did defendant no harm; otherwise it would have been the duty of the trial judge to direct a verdict for plaintiff on the written evidence.  The letters required defendant to pay for all the property it failed to return to plaintiff before the first of October, and there was no dispute as to what that property was or its appraised value.  It was also defendant's duty to collect the outside property and bring the inside property to the mouth of the mine and give plaintiff notice of its readiness to deliver, but it did none of these things.  In the face of defendant's failure to return or offer to return the property, the title thereto vested in it, while the right to recover therefor vested in plaintiff.  In other words, plaintiff was bound to receive all property delivered or tendered prior to October 1st, and defendant was bound to pay the inventory price for all property it failed to deliver or tender by that date: see Dewey v. Erie Borough, 14 Pa. 211.  Where a debt may be discharged by the delivery of certain property within a specified time, a failure to so de-

liver it renders the debtor liable to pay in money: Goodwin v. Heckler, 252 Pa. 332; Stewart et al. v. Morrow, 1 Grant 204; Roberts v. Beatty, 2 P. & W. 63. Here the obligation to pay on failure to deliver the property is stronger because expressly stipulated in the contract. This case is not unlike the purchase of property upon trial, which becomes absolute unless returned within the time specified: Butler et al. v. School District, 149 Pa. 351; Stutz v. Coal & Coke Co., 131 Pa. 267; Benjamin on Sales, section 595.

It is no excuse that defendant could have turned over the property had it seen fit to do so. The language in defendant's letter, "We will pay for what we cannot turn over," taken in connection with the entire letter, means, "We will pay for what we fail to turn over," and that such was the understanding of the parties appears in the correspondence and especially in defendant's letter of September 30th. It is a novel proposition that a party may escape the performance of a contract because of an undisclosed ability on its part to perform it. Such construction would defeat the purpose and object of the contract,—which, if possible, should be avoided: Bangor P. Slate Co. v. Bangorvein Slate Co., 270 Pa. 161. The offer therefore, to show defendant's ability to turn over the property on October first was rightly rejected; as was the evidence tending to show what use was made of the property on or after that date, while the request to charge that defendant should be excused because it could have returned the property in question within the time stated, was correctly refused.

It was proper for the trial judge in the course of his charge, and when giving additional instructions, to read from and comment upon letters which were in evidence.

There was no error in refusing defendant's first point, viz: "1: The letter of April 10th, 1918, from T. M. Dodson to Warren Delano and that of April 12th, 1918, from Delano to Dodson must be construed in connection with the understanding of the parties that the articles belong-

ing to plaintiff in defendant's possession were intended to be retained until replaced by the installation of electrical machinery at the Morea Colliery." It contains the unwarranted assumption that the parties had an understanding different from that embodied in the agreement as shown by the letters and found by the jury. The right of defendant, under the original lease, to reject the property within a reasonable time was undoubted, as was its right to do so before October first, under the agreement. That the parties expected defendant would release the property listed in Schedule C, within the time specified, cannot excuse its failure to do so. Doubtless defendant desired to use the old machinery until the installation of the new without buying it, but the agreement of April 9th set a limit upon its right to do so.

Defendant's third point could not be affirmed because founded on an erroneous assumption that the letter of April 12th fixed no time for the delivery of the articles mentioned in Schedule C.

The assignments of error are overruled and the judgment is affirmed.