In the Matter of BUFFALO AND ERIE RAILWAY COMPANY, Respondent.

AMALGAMATED ASSOCIATION OF STREET AND ELECTRIC RAILWAY EMPLOYEES OF AMERICA, DIVISION No. 592 OF FREDONIA, and DIVISION No. 624 OF BUFFALO, Appellant.

(Submitted January 11, 1929; decided February 13, 1929.)

*Bernard Swartz* for appellant. The controversy between the parties is not the subject of statutory arbitration. (*Williams* v. *Hamilton Fire Ins. Co.*, 118 Misc. Rep. 799; *Matter of Webster* v. *Van Allen*, 217 App. Div. 219; *Berizzi* v. *Krausz*, 239 N. Y. 315; *Matter of Fletcher*, 237 N. Y. 440; *Ryan* v. *Daugherty*, 30 Cal. 218; *Richards* v. *Holt*, 61 Iowa, 529; *Anderson* v. *Beebe*, 22 Kans. 768; *Osborn* v. *Fall River*, 140 Mass. 508; *Torey* v. *Munroe*, 119 Mass. 490.)

*Fritz Fernon* for respondent. The provisions of section 4 of the Arbitration Law apply to this controversy, and that section provides for the appointment of a third arbitrator by the court or a judge when for any reason there is a lapse in the naming of such third arbitrator. (*Matter of Amalgamated Association of Railway Employees*, 196 App. Div. 206; *Matter of Webster* v. *Van Allen*, 207 App. Div. 219.)

CRANE, J. The Special Term of the Supreme Court for the county of Erie on the 29th day of June, 1927, designated an arbitrator or umpire, pursuant to section 4 of the Arbitration Law (Cons. Laws, ch. 72), under an agreement or contract between the Buffalo and Erie Railway Company and the Amalgamated Association of Street and Electric Railway Employees of America, Division No. 592 of Fredonia, N. Y., and Division No. 624 of Buffalo, N. Y. The Appellate Division has unanimously affirmed the order and has certified that in its opinion a question of law is involved which ought to be reviewed by this court.

The question, briefly stated, is whether the matter in controversy comes within the provisions of the Arbitration Law of this State.

The agreement made between the railway and the Amalgamated Association in May of 1926, provided for the hours of work of the men, and for their rate of wages

and many other details which are usually contained in this class of agreement between a railroad and its operatives. Article XII and article XVI are the only two provisions necessary to state here. Article XVI I will quote first:

" This agreement and the provisions thereof shall continue in force and be binding upon the respective parties hereunto until the first day of May, 1927, and from year to year thereafter unless changed by parties hereunto. Either of the parties hereunto desiring a change in any section or sections of this Agreement, shall notify the other party in writing of the desired change, thirty days prior to the end of each year, which is the first day of April. After such notice, the agreement shall be opened up and the change or changes shall be considered. Upon the failure to reach a mutual agreement upon any changes desired by the parties hereunto, the same shall be arbitrated as provided in this agreement, and this agreement shall be modified to conform to the decision of the arbitration."

The provision relating to arbitration is article XII.

" All matters that cannot be adjusted between the Company and the Association shall be submitted to a temporary Board of Arbitration. Either party to this agreement shall, upon being notified in writing by the other party that arbitration is desired, name its arbitrator, within forty-eight hours from the date of receiving such notice. The Board of Arbitration shall be composed of three persons, the Company to select one, the Association to select one, and the two thus selected shall within five days from the date of their appointment, select a third arbitrator. At the Hearing before the Board of Arbitration, either side may be represented by anyone whom they may desire, and after all evidence and arguments have been heard by the Board, they shall, within fifteen days, formulate their award in writing and submit the same to both parties of this agreement. The findings of the majority of the Board shall be final and binding upon both parties of this agreement."

Prior to May 1, 1927, the railroad found it necessary in view of reduction in the volume of business carried over its line, compared with the volume of business carried by it in preceding years, to make a ten per cent reduction in the compensation of substantially all its employees of whatever kind and character, and announced such proposed reduction in wages as effective on May 1, 1927. The railway desired a change in the contract. The Amalgamated Association objected to said reduction and demanded arbitration. To this the railroad company acceded, and arbitrators were appointed by the respective parties, pursuant to article XII of the agreement. The two arbitrators, however, were unable to agree upon a third. Thereupon, application was made to the Special Term by the railroad company for the appointment of the third arbitrator or umpire, pursuant to section 4 of the Arbitration Law.

Attention is immediately directed to the fact that no dispute has arisen between the parties to the contract over the terms or provisions of the contract, or any difficulty arising thereunder. The men have been paid the wages agreed upon, and they have worked for and accepted those wages. The railroad company desires to make a new contract. It desires to reduce wages ten per cent and seeks arbitration under the Arbitration Law for the purpose of arriving at new terms and agreements as to the rate of wages. No power exists in the courts to make contracts for people. They must make their own contracts. The courts reach their limit of power when they enforce contracts which parties have made. A contract that the court shall determine what an agreement shall be for the future is unenforcible, unless the lines of the agreement have been laid out by the parties. The most a court may do is to determine some incidental fact, as for example the reasonable value of property or services, and thereupon enforce the agreement, by judgment for damages, if not specifically, with such value written into

it. Such is not the nature of the question that has been left open for decision here. The rate of wages to be fixed is not the fair or market value, the value measured by an objective standard, as in action on a *quantum meruit*, but such compromise value as may be chosen as a substitute. Indeed the contract is not limited to a change in the rate of wages, but extends to any provision that has become distasteful to one or other of the parties. Whenever one or other desires a change in some respect and agreement is impossible, there may be a reference to third parties who are to say what the agreement ought to be. Arbitrators under the Arbitration Law deal with the same kinds of controversies that are dealt with by the courts. This was decided in *Matter of Fletcher* (237 N. Y. 440). The controversy between this employer and its men is not of such an order. Whether or not it is possible for the Legislature to provide for the arbitration of such differences hereafter, fixing the rate of wages which an employer ought to pay, is not the question we are called upon to decide. Arbitration upon these matters has been attempted to a certain extent by Congress in dealing with interstate commerce. (U. S. Compiled Statutes, 1916, Annotated, No. 8, §§ 8666–8676.) Conceivably the class of justiciable controversies may be enlarged by legislation. The arbitration statute now in force is confined to controversies that are justiciable under the law as it exists today.

No power is given to the courts to change or modify existing contracts or to make new ones for the parties.

The order of the Appellate Division should, therefore, be reversed and the petition dismissed, with costs in all courts.

POUND, J. (dissenting). We have a " written contract " and a provision therein " to settle by arbitration a controversy arising between the parties to the contract." We have such a controversy. The agreement to arbitrate is a valid one under the language of Arbitration Law, § 2.

The decision of *Matter of Fletcher* (237 N. Y. 440) is

not controlling. While the language of the opinion may be unnecessarily broad for general application, the decision rests wholly on the distinction between a valuation and an arbitration. The agreement for valuation was inserted in the contract in that case to prevent a controversy, not to settle one. The distinction is pointed out by ESHER, M. R., in *Matter of Carus-Wilson and Greene* (18 Q. B. D. 7, at p. 9) as follows:

" If it appears from the terms of the agreement by which a matter is submitted to a person's decision, that the intention of the parties was that he should hold an enquiry in the nature of a judicial enquiry, and hear the respective cases of the parties, and decide upon evidence laid before him, then the case is one of an arbitration. The intention in such cases is that there shall be a judicial enquiry worked out in a judicial manner. On the other hand, there are cases in which a person is appointed to ascertain some matter for the purpose of preventing differences from arising, not of settling them when they have arisen, and where the case is not one of arbitration but of a mere valuation  There may be cases of an intermediate kind, where, though a person is appointed to settle disputes that have arisen, still it is not intended that he shall be bound to hear evidence or arguments. In such cases it may be often difficult to say whether he is intended to be an arbitrator or to exercise some function other than that of an arbitrator. Such cases must be determined each according to its particular circumstances."

The arbitrators in this case are to proceed judicially and reach a determination based on evidence. The controversy is made arbitrable by the agreement of the parties. It is not a compulsory arbitration. The court makes no contract for the parties. It enforces one already in existence. The court should enforce true arbitration contracts rather than permit the parties to disregard them.

It by no means follows that the findings of the arbitra-

tors may be enforced by the court by the remedy of specific performance. No man may be compelled to work for another or to continue another in his employment. I hold merely that industrial disputes as to future wages may be submitted to arbitration where the parties so agree. The incapacity of a court of law to effectuate justice by enforcing the agreements of parties should not be readily admitted. The court should be keen to enable the parties to ascertain their rights in the mode prescribed by them for that purpose.

The order should be affirmed, with costs.

CARDOZO, Ch. J., LEHMAN, KELLOGG and O'BRIEN, JJ., concur with CRANE, J.; POUND, J., dissents in opinion; HUBBS, J., not sitting.

Order reversed, etc.