In the Matter of Arbitration between AMERICAN FEDERATION OF GRAIN MILLERS, LOCAL No. 110, A. F. OF L., Petitioner, and ALLIED MILLS, INCORPORATED, Respondent.

Supreme Court, Special Term, Erie County, April 27, 1949.

*Peter J. Crotty* for petitioner.

*Horace C. Winch, Thomas A. Campbell* and *Harold A. Mercer* for respondent.

BATT, J.   This is a proceeding under section 1450 of the Civil Practice Act to direct an arbitration of alleged disputes that have arisen between the parties under a contract dated December 29, 1946, but effective July 1, 1946.

Said contract by paragraph 14 thereof provides: " In the event of controversy, any and all controversies and grievances shall be settled, if possible, by the employees and the management of the Milling Company.   In the event that a satisfactory adjustment cannot be reached between the parties as stated above, the matter in dispute will be submitted to a Board of Arbitration which shall consist of three members and be selected in the following manner: Each party to this agreement shall select one member to the Board of Arbitration within five (5) days after failure to settle question or questions in dispute.   The two members of the Board of Arbitration shall within ten (10) days of their selection select a third member to the Board of Arbitration.   The decision of the majority of the said Board shall be final and binding upon both parties to this agreement.   Each party shall bear the expense of its representative, the expense of the third member together with any other expense of the arbitration shall be equally divided between the party of the first part and the party of the second part.   There shall be no suspension of operations during negotiations."

The petitioner claims that a dispute has arisen between the parties relating to the discharge of three employees of the company.   It is claimed that said discharges were in violation of the seniority clause of the contract and resulted from the adoption by the company of a pension plan which provided for retirement of employees at the age of sixty-five years.   The petitioner claims that the company, regardless of the seniority clause of the contract, has refused to arbitrate the alleged dispute.

The company claims that the dispute is not within the purview of the contract and that the petitioner has waived and abandoned any right to compel arbitration and is guilty of laches.

The facts of the alleged dispute are as follows: On March 1, 1945, the company promulgated its pension plan which provided for compulsory retirement of employees at sixty-five years of age retroactive to January 1, 1944.   In April, 1945, the plan was outlined to the employees by means of a booklet given each employee.   On April 11, 1946, a copy of the booklet was posted on the bulletin board in the plant, calling attention of the employees to these provisions.   On May 3, 1946, the three employees in question were notified that as they had passed the retirement age, they would

be retired January 1, 1947. The notification of May 3, 1946, was given during the period of the 1945 contract. Thereafter a new contract between the parties was executed, effective July 1, 1946, but actually signed on December 29, 1946. It is claimed that the petitioner made no demand during the negotiations leading up to the execution of the 1946 contract relating to the company's retirement plan and at no time was the matter discussed during said negotiations until the time the contract was signed. The 1946 contract contains no reference to said retirement plan. On January 6, 1947, the petitioner notified the company that the retirement of the three men gave rise to a grievance which should be arbitrated pursuant to the provisions of the arbitration clause of the agreement identical in form to that contained in the 1945 agreement hereinabove referred to. On January 15, 1947, the petitioner submitted the controversy to the United States Mediation and Conciliation Service. Subsequently, a conference took place with representatives of that service, the petitioner and company, but no action was ever taken by the Mediation Service. On April 7, 1947, the petitioner again requested that the retirement of the three men be arbitrated. On April 17, 1947, the company was notified that the petitioner had filed with the National Labor Relations Board an unfair labor practice charge because of its refusal to bargain relative to its retirement plan. No action was taken on this charge and on June 11, 1947, the petitioner withdrew the charge. Later a new contract was made for the period from July 1, 1947 to July 1, 1948. On December 9, 1947, the union filed a new unfair labor practice charge for a refusal to bargain on pension plans. No action on this charge was taken by the National Labor Relations Board except to notify the company of the filing of the charge. This charge was withdrawn August 10, 1948. Subsequently a new contract was made between the parties for the year ending July 1, 1949, after demand by the union as of April 29, 1948, to negotiate a satisfactory pension plan. The new contract made no reference to pension plans, nor had any of the previous contracts made any reference thereto. On August 16, 1948, the union filed its third unfair labor practice charge, charging failure to bargain on the subject of a pension plan. A hearing was had on this charge on December 20, 1948, before a trial examiner appointed by the National Labor Relations Board. Subsequently, the trial examiner filed his recommendations, to the effect that the company should cease and desist refusing to bargain on pension plans. The report of the trial examiner was affirmed by an order of the National Labor Relations Board dated April 7, 1949. This order directs affirma-

tive action by the company as follows: " (a) Upon request, bargain collectively in respect to its ' Retirement Plan ' with American Federation of Grain Millers Local 110 (A.F.L.) as the exclusive representative of all the employees in the aforesaid unit."

In the decision in *Inland Steel Co.* v. *National Labor Relations Board* (170 F. 2d 247) decided September 23, 1948, it was held that an employer was required to bargain collectively with its employees with respect to retirement and pension plans. Prior to that decision, it had been held in a series of decisions by the National Labor Board that the subject of pension and retirement plans was solely a management function and not subject to collective bargaining in the absence of a specific contract provision restricting the right.

The following syllabus occurs in *Matter of American Salt Corp.* [*Int. Chem. Workers' Union*] (9 Labor Arbitration Reports 124):

" Pension and retirement plan instituted by employer but held in abeyance during wartime labor shortage was properly put into effect by employer after war was over, despite union's objection that retirement of aged employees constituted violation of seniority provisions of contract, where plan had been instituted with full knowledge of employees and was not modified or restricted in any way by contract subsequently negotiated by union.

" Establishment of retirement plans is prerogative of management in the absence of a specific contract provision restricting this right." (See, also, *Matter of Swift & Co.* [*United Packinghouse Workers*], 9 Labor Arbitration Reports 560; *Matter of General Amer. Transp. Corp.* [*United Steelworkers*], 7 Labor Arbitration Reports 773; *Matter of McKesson & Robbins, Inc.* [*Int. Longshoremen's & Warehousemen's Union*], 6 Labor Arbitration Reports 590; *Matter of Metals Disintegrating Co.* [*United Mine Workers*], 4 Labor Arbitration Reports 601.)

In the instant case, the retirement plan was promulgated while the 1944–1945 contract was in effect between the parties and the plan was made retroactive to January 1, 1944. The dispute in connection with the plan arose during the term of the 1945–1946 contract, when three employees affected by the plan were notified that, having reached the retirement age of sixty-five years, they could be retired on January 1, 1947. The three men were retired on said date and are no longer in the employ of the company. Thus, annual contracts were made between the parties

subsequent to the notice given the three employees under the pension plan, all of which contain no provisions relative to the pension plan. In this proceeding, the union moves for an order directing the arbitration of the dispute growing out of the retirement of the three men. This question involves a consideration of the entire pension plan and whether it is arbitrable in this proceeding under the 1945–1946 contract between the parties.

As heretofore stated, at the time the 1945-1946 contract was made, the law was that the question of retirement plans was solely a management function and not subject to collective bargaining. It could not have been within the contemplation of the parties that the arbitration clause of that contract would govern any dispute relating to retirement plans when the law at that time was well settled on that question.

It appears from the affidavits submitted on this motion that the negotiations prior to the signing of the 1946 contract, the correspondence between the parties, the refusal of the company to discuss arbitration relative to pension plans during negotiations, the lodgment of complaints with the National Labor Relations Board to compel the company to bargain collectively relative to a retirement plan, all indicate that that question was expressly excluded from the 1946 contract.

In *Matter of Amsterdam Dispatch, Inc.,* v. *Devery* (254 App. Div. 233, affd. 278 N. Y. 688) the court, after referring to an arbitration clause in a contract between the parties, stated: " However desirable arbitration might be under these provisions to determine matters concerning which the parties have not agreed and thereby to create a contract which they have not made, it is not authorized by our statute. (*Matter of Buffalo & Erie R. Co.,* 250 N. Y. 275; *Matter of Fletcher,* 237 id. 440.) " (See, also, *Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76, 80.)

The scope of the collective bargaining agreement between the parties is for the court to decide. (*Matter of Graphite Metallizing Corp.* [*DeRosa*], 271 App. Div. 839; *Matter of Belding Heminway Co.,* 295 N. Y. 541, 543; *Matter of Bullard* v. *Grace Co.,* 240 N. Y. 388, 397.)

Upon the undisputed facts presented by affidavits on this motion, it appears that the scope of the 1946 agreement did not cover any dispute arising out of the adoption of the pension or retirement plan by the company and consequently the court is unable in this proceeding under the Civil Practice Act to compel the company to arbitrate any question relating thereto.

Assuming that under the 1946 contract, the question is arbitrable, we find that the three men, who have been retired because of the adoption of the retirement plan, have not been in the employ of the company for over two years. No proceeding under section 1450 of the Civil Practice Act to compel arbitration of the alleged dispute concerning the retirement of the three men was ever instituted until the present time. Instead, the union lodged three complaints against the company with the United States Mediation and Conciliation Service, the first two of which it did not prosecute and the last complaint before that body has been prosecuted and an order entered compelling the company to bargain collectively with respect to its " Retirement Plan ". That action by the union, taken in the Federal forum, is inconsistent with its position in this proceeding and by that action it elected to waive and abandon its right, if any, under section 1450 of the Civil Practice Act.

In *Matter of Young* v. *Crescent Development Co.* (240 N. Y. 244, 248–249, 251) there was a contract between contractor and owner containing an arbitration clause. Contractor filed liens for work before making an application for arbitration. It was contended that contractor, if he desired, could abandon proceedings under the Lien Law. The court stated: " the answer * * * must be that the respondents by filing mechanics' liens set out on a course so inconsistent with arbitration that they must be regarded as having decisively elected to waive and abandon their right to that course. * * *

" The question is of the intent with which that act at that time was performed and if judged by the rules applicable to the question of intent it indicated a purpose to abandon the right to arbitration, the right thus lost cannot be recaptured by a subsequent change of mind and conclusion by respondents that after all they would rather proceed under the arbitration clause than under the Mechanics' Lien Law. If the abandonment has been once made it endures for the purposes of this proceeding and its consequences cannot be avoided."

The union has succeeded in compelling the company to bargain collectively on the question of its retirement plan in another jurisdiction. Its position in that proceeding is inconsistent with its claim in this proceeding that the 1946 contract, in fact, covered a situation in regard thereto which is subject to arbitration under section 1450 of the Civil Practice Act.

The motion is **denied**.