Kenneth S. Hixson, Judge, dissenting.
I am not particularly fond of the doctrine of mootness; however, the Arkansas Supreme Court has historically adopted and employed mootness since at least 1860 and continues to do so. The underlying principle of mootness is that appellate courts do not give advisory opinions. It has been said many times that a case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. State v. First Serv. Bank of Greenbrier , 2013 Ark. 101, 2013 WL 842241. While the 1860 supreme court in State v. Jones , 22 Ark. 331, 1860 WL 834 (1860), did not use the word "mootness," the Jones court described and employed the concept of mootness as follows: "[W]e do not see the propriety of adjudicating points of law, for the purpose of correcting errors, whose correction cannot benefit the complaining party[.]" Id. at 333. Then, as recently as December 2017, our supreme court recognized and utilized the doctrine of mootness in dismissing an appeal and stated, "We have consistently held that we will not review issues that are moot because to do so would render an advisory opinion." Kiesling v. Ark. Prof'l Bail Ass'n , 2017 Ark. 346, 532 S.W.3d 567.
While the majority states that the dispositive issue on appeal herein is whether the trial court erred in its interpretation of the "able to use" standard in Duffner v. Alberty , 19 Ark. App. 137, 718 S.W.2d 111 (1986), that is incorrect. That would have been the dispositive issue but for appellee timely interjecting the issue of mootness into this appeal. In appellee's response brief, appellee properly hurdled appellant's issue on appeal and contended that because the contractual noncompete covenant has expired by its own terms, this appeal is now moot. Therefore, before this court can reach the merits of the underlying appeal, we must analyze this record for mootness. Based on more than 250 years of precedent, I would reluctantly conclude this case is moot and dismiss the appeal.
The majority states that appellant "repeatedly asked the circuit court to issue an injunction for one year from the date of the order" or a "one-year prospective injunction." From my review of the record, appellant did request an injunction for twelve months from the entry of the circuit court's order in the body of its posttrial brief. However, immediately after making that statement, appellant then argued in summary that the "Court must grant the Plaintiff an injunction to strictly enforce the terms of the [noncompete agreement]." In that same document, appellant also quoted the noncompete agreement's provision stating that "[t]he parties agree that the term of this Agreement shall ... extend one (1) years from the date of the Employee's termination." Thus, appellant's *825 last statement before the circuit court only sought an injunction that would "strictly enforce" the terms of their noncompete agreement, which provided for an injunction for one year only from the date of termination.
Further, even if appellant had requested a one-year prospective injunction, the circuit court specifically found in its order that "[t]he [noncompete agreement] bars [appellee] from engaging in the HVAC business in Washington, Carroll, Madison and Benton Counties for a period one year from the termination of [appellee]'s employment with [appellant]. [Appellee] resigned from BAHC on June 6, 2016[.]" (Emphasis added.) Appellant's opening brief failed to contest those specific findings. Instead, appellant stated that it "brought suit to enforce the non-compete agreement ... [and requests this court to] reverse the decision of the circuit court and issue an injunction enforcing the agreement entered into between the parties. " (Emphasis added.) Although appellant attempts to change its argument in its reply brief, it is well settled that an argument made for the first time on reply comes too late. Bynum v. State , 2017 Ark. App. 41, 511 S.W.3d 860 ; Rymor Builders, Inc. v. Tanglewood Plumbing Co., Inc. , 100 Ark. App. 141, 265 S.W.3d 151 (2007). Unless an appellant opens the briefing with all of its arguments for reversal, appellee has no opportunity to respond to those arguments in writing. Id. A reply brief is the place for rebuttal, not entirely new arguments for reversal, and it is well established that we will not consider an argument made for the first time in a reply brief. Id. ; Owens v. State , 354 Ark. 644, 128 S.W.3d 445 (2003) ; Orintas v. Point Lookout Prop. Owners Ass'n Bd. of Dir. , 2015 Ark. App. 648, 476 S.W.3d 174. Thus, appellant cannot now circumvent the fact that its appeal is moot by changing or adding arguments on appeal.
This case is a simple breach-of-contract case. The contract is in writing; therefore, our initial task is to interpret the written contract between the parties. The provision at issue is not ambiguous; therefore, it must be interpreted from the four corners of the document. We are prohibited from resorting to the various interpretation machinations and techniques that are regularly used to interpret ambiguous contracts. The paragraph of the written contract at issue herein states as follows:
3. Term. The parties agree that the term of this [noncompete] Agreement shall be during the life of the Employee's employment with the Employer and extend one (1) years from the date of the Employee's termination.
(Emphasis added.) It is elementary that for a noncompete agreement to be enforceable, it must satisfy at least two rudimentary requirements: (1) the restricted geographical area must be reasonable and (2) the restricted time period must be reasonable. While the restrictions in the parties' contract certainly appear to be clear and unambiguous, one might inquire as to how the employer actually described the restrictions in its complaint wherein the employer repeatedly demanded that the court "enforce the contract."
Appellant described the reasonableness of the geographical area restriction in its complaint as follows:
23. The geographical restriction [Washington, Benton, Carroll, and Madison counties] placed on Neil in the Agreement is reasonable and is specifically restricted to areas where BAHC presently serves customers.
Appellant then described the reasonableness of the time period restriction in its complaint as follows:
*826 24. The one-year time limit from the termination of employment at BAHC in the Agreement is reasonable.
(Emphasis added.) And finally, in a paragraph in its complaint that precedes these two paragraphs, appellant concluded that because the geographical-area restriction is reasonable and because the time-period restriction is reasonable, it is entitled to relief from appellee's breach of the agreement.
21. Neil [appellee] has agreed that remedies at law for any breach of the Agreement would be inadequate and that BAHC would be entitled to injunctive and equitable relief for any violation thereof.
That begs the question: Assuming arguendo that the appellee breached the noncompete agreement, what is the relief to which the appellant is entitled? The mutually agreed contract provides the answer. Appellee employee may be enjoined from competing with appellant employer for one year from the date of appellee's termination within the restricted area. It is undisputed that appellee terminated his employment on June 6, 2016. Therefore, the noncompete agreement provides in clear and unambiguous terms that the employee may be enjoined from competition with the employer until June 6, 2017. Therefore, according to the parties' contract, the noncompete agreement expired by its own terms on June 6, 2017. That is the undeniable and unassailable crux of the appellee's mootness argument. The noncompete period has already expired, and any judgment rendered on the merits of the agreement would have no practical legal effect upon a then existing legal controversy. This case presents the very essence of mootness. If this case is reversed and remanded, the trial court cannot grant the appellant employer any relief under the parties' contract.
The majority, however, takes a different tack. The majority is of the opinion that a court (even our court) can fashion a remedy to justify its position regardless of the terms of the parties' contract. The majority would have you believe that despite clear, unambiguous language in the contract between the parties that restricts the noncompete period to one year after termination, courts have the inherent power to fashion its own remedies. The majority believes that despite the clear language in the contract to the contrary, the time-period restriction may be modified from "one year after termination" to "one year after the court's order." I could not disagree more.
Regardless of a noble crusade that the majority is on, our law does not allow our courts to rewrite a written unambiguous contract. The contract between the parties does NOT provide that the restricted noncompete period is one year from the date of the employee's termination ... or one year from the date of the court's order as determined by the court. Rewriting of private contracts has long been the universal bane of appellate courts. Our supreme court even joined the chorus in the context of noncompete agreements in Rector-Phillips-Morse, Inc. v. Vroman , 253 Ark. 750, 489 S.W.2d 1 (1973). In Vroman , George Vroman was a real estate agent for Rector-Phillips-Morse, Inc. (RPM). Vroman signed a three-year noncompete agreement with RPM. The trial court found that the noncompete period was too long and therefore, not reasonable. Accordingly, the trial court found the noncompete agreement to be unenforceable. On appeal, RPM contended, inter alia , that the court could shorten the time-period restriction in the noncompete agreement and in effect, make the time period reasonable. Our supreme court soundly, and with palpable vigor, *827 castigated RPM for suggesting the courts could rewrite its contract with Vroman:
Our rule is that when a restriction such as this one is too far-reaching to be valid, the court will not make a new contract for the parties by reducing the restriction to a shorter time or to a smaller area. Brown v. Devine , 240 Ark. 838, 402 S.W.2d 669 (1966) ; McLeod v. Meyer , 237 Ark. 173, 372 S.W.2d 220 (1963).[3 ]
We are firmly convinced that parties are not entitled to make an agreement, as these litigants have tried to do, that they will be bound by whatever contract the courts may make for them at some time in the future. Such a doctrine would confer upon the courts the power to make private agreements-a matter certainly not within the judicial province as it has been traditionally understood in our law.
The New York Court of Appeals has, in two cases, firmly and correctly rejected suggestions similar to the one now before us. In Stoddard v. Stoddard , 227 N.Y. 13, 124 N.E. 91 (1919), the parties to a maintenance contract in a divorce case inserted a clause purporting to authorize the court to modify the agreement to meet any material change in the circumstances of either spouse. The court quite properly refused to make a contract for the parties, saying:
'Thus we come to the question already outlined, whether the Supreme Court had jurisdiction to take hold of one of the provisions of this contract and determine the reasonable amount to be paid by one of the parties to the other and in that respect make a new agreement for them. We know of no principle, and we have been cited to no authority, which authorizes the court in this way, in effect, to write a
clause in the contract for the parties. While the parties to this particular contract have attempted to agree that the court might exercise this jurisdiction, it really is not claimed that that agreement confers upon the court powers which it does not inherently possess....'
A decade later, in In re Buffalo & E. Ry. Co. , 250 N.Y. 275, 165 N.E. 291 (1929), the parties to a labor contract attempted to provide in the agreement that if a dispute arose a state arbitration board, which was part of the judicial system, might modify the contract. In holding that no such jurisdiction could be conferred the court said:
'No power exists in the courts to make contracts for people. They must make their own contracts. The courts reach their limit of power when they enforce contracts which parties have made ....'
The principles stated by the New York court are applicable here. It must be remembered that, in the absence of an agreement, an employer has no remedy in equity to restrain a former employee from engaging in a competitive business within a certain area or for a certain length of time. The remedy is based upon the contract and is nonexistent without it. Hence the present contractual attempt to agree upon whatever restriction may be valid and enforceable, if the parties' covenant proves to be excessive, is in fact an attempt to delegate to the court the power to make a new contract, which the employer then seeks to enforce by an application for injunctive relief.
*828 ....
Such a practice of granting partial injunctive relief not only amounts, as we have seen, to a judicial rewriting of the parties' contract; it also has a clear tendency to provoke unnecessary litigation. That is, even though the restriction is unreasonably far-reaching the employer has nothing to lose by going into court and seeking partial injunctive relief.
....
After studying the problem we are convinced that our prior decisions, refusing to rewrite contracts such as this one, are sound. We must therefore decline the appellant's invitation to rewrite this contract, either directly, by giving effect to the parties' agreement to accept whatever modification the court may find to be reasonable, or indirectly, by approving a limited injunction that would in effect enforce a contract that the parties might have made but did not make.
Vroman , 253 Ark. at 753-56, 489 S.W.2d at 3-5 (emphasis added).
The words of Justice George Rose Smith are as authoritative and persuasive today as they were in 1973. What binding principles may be gleaned from Vroman regarding courts reviewing private contracts:
• By allowing courts to create the terms of an agreement between parties, "would confer upon the courts the power to make private agreements-a matter certainly not within the judicial province as it has been traditionally understood in our law. " Vroman , 253 Ark. at 753, 489 S.W.2d at 4 (emphasis added).
• "We know of no principle, and we have been cited to no authority, which authorizes the court in this way, in effect, to write a clause in the contract for the parties. " Vroman , 253 Ark. at 754, 489 S.W.2d at 4 (emphasis added).
• "No power exists in the courts to make contracts for people. They must make their own contracts. The courts reach their limit of power when they enforce contracts which parties have made. " Vroman , 253 Ark. at 754-55, 489 S.W.2d at 4 (quoting In re Buffalo & E. Ry. Co. , 250 N.Y. 275, 165 N.E. 291 (1929) ) (emphasis added).
• "It must be remembered that, in the absence of an agreement, an employer has no remedy in equity to restrain a former employee from engaging in a competitive business within a certain area or for a certain length of time. The remedy is based upon the contract and is nonexistent without it. " Vroman , 253 Ark. at 755, 489 S.W.2d at 4 (emphasis added).
• "[Such conduct] not only amounts, as we have seen, to a judicial rewriting of the parties' contract; it also has a clear tendency to provoke unnecessary litigation. " Vroman , 253 Ark. at 755, 489 S.W.2d at 5 (emphasis added).
• "After studying the problem we are convinced that our prior decisions, refusing to rewrite contracts such as this one, are sound. We must therefore decline the appellant's invitation to rewrite this contract, either directly, by giving effect to the parties' agreement to accept whatever modification the court may find to be reasonable, or indirectly, by approving a limited injunction that would in effect enforce a contract that the parties might have made but did not make. " Vroman , 253 Ark. at 756, 489 S.W.2d at 6 (emphasis added).
*829 Neither this court, nor the trial court, has the authority to rewrite an unambiguous term of a written contract that was agreed between the parties from "one year after termination" to "one year after a court's order." Whether this amounts to a direct rewriting of the contract or an indirect rewriting of the contract as stated in Vroman ; either exercise is unacceptable and cannot be tolerated. If we allow the courts to rewrite the agreement at the court's whim and redefine the restricted noncompete time period, are we going to allow the courts to redefine the restricted geographical restriction? Perhaps, the court believes that Washington, Benton, Carroll, and Madison Counties are insufficient to adequately protect the employer. Would we allow the court to add Baxter, Crawford, and Sebastian Counties to the restricted area? Perhaps, the court believes that the noncompete remedies are insufficient to adequately protect the employer. Would we allow the court to add fines or monetary penalties to the agreed contract? Obviously (or, perhaps, not obviously) we would not.
I understand that the mootness doctrine places the employer (and, quite often, the employee) between the proverbial rock and a hard place. However, our task is not to extricate the parties; our task is to interpret an unambiguous contract. Since we cannot rewrite the contract between the parties herein; I have no choice but to hold that the time period agreed between the parties expired by its own terms on June 6, 2017, and therefore, any judgment we make herein would have no practical legal effect between the parties.
The majority alternatively holds that the litigation of all noncompete agreements necessarily falls within the capable-of-repetition-yet-evading-review exception to the mootness doctrine. I disagree. An exception is made to the mootness doctrine for cases that are capable of repetition yet evading review, being cases in which the justiciable controversy will necessarily expire or terminate prior to adjudication. Wright v. Keffer , 319 Ark. 201, 203, 890 S.W.2d 271, 272 (1995). Examples of such cases are abortion-law challenges, election-procedure cases, and cases involving various court procedures. See, e.g. , Roe v. Wade , 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (challenge to abortion law considered although pregnancy concluded); Nathaniel v. Forrest City Sch. Dist. No. 7 , 300 Ark. 513, 780 S.W.2d 539 (1989) (challenge to election procedure considered although election would be completed before review could be had); Robinson v. Shock , 282 Ark. 262, 667 S.W.2d 956 (1984) (writ of habeas corpus considered although petitioner released); Ark. Television Co. v. Tedder , 281 Ark. 152, 662 S.W.2d 174 (1983) (writ of mandamus for media access to courtroom considered although trial concluded). Noncompete agreements do not fall into one of these categories, and appellate courts have routinely reviewed noncompete agreements that have not necessarily expired or terminated prior to adjudication. It just so happens that this particular noncompete agreement has expired.
Appellant likened this case to one of our more recent opinions involving a noncompete agreement, in which we held that the appeal was not moot. See Box v. J.B. Hunt Transport, Inc. , 2017 Ark. App. 605, 533 S.W.3d 603. In Box , a temporary restraining order had been issued. However, J.B. Hunt voluntarily dismissed its action without prejudice pursuant to Arkansas Rule of Civil Procedure 41(a). Because a violation of the agreement could trigger a two-year remedy, J.B. Hunt could have refiled its motion, evading our review, and receive another temporary restraining order. That is not the case here. The noncompete agreement was for only one year and cannot *830 be relitigated. Furthermore, we review enforceability of noncompete agreements on a case-by-case basis, and there is no indication in the record that the specific facts of this case will be repeated. Thus, I would affirm.
Having said that (and repeating my introductory comment that I am not particularly fond of the mootness doctrine), either our supreme court or the legislature may change the law and abolish or modify the mootness doctrine. Or, perhaps our supreme court may modify procedural rules and mandate expedited appeals in cases involving time-sensitive periods. However, until the mootness doctrine or the procedure is changed, our obligation is to enforce the laws of our state as they presently stand.
Murphy, J., joins in this dissent.

In Vroman , the employer was requesting the court to fashion a shorter restricted time period and the court refused to do so. In contrast, in the case at bar, the employer is actually requesting the court to fashion a restricted time period that could be a longer period.