# Bangor Peerless Slate Co. *v.* Bangorvein Slate Co. et al., Appellants.

*Lease—Slate quarry lease — Relief from minimum royalties — Covenant as to business depression—Nonessential business—Contract—Construction—Written instrument.*

1. In construing a contract the primary rule is to ascertain and give effect to the intention of the parties and in arriving at such intention, where the language is doubtful or susceptible of more than one construction, the court may consider the nature and situation of the subject-matter and the apparent purpose or object in making the contract in the form in which it was made, or of using a particular expression or sentence.

2. Where a slate quarry lease provides that the lessee shall be relieved from the performance of his covenants, including payment of minimum royalties, if "there should be a wide-spread busi-

ness depression affecting not only the slate trade in Northampton County, but the business of the United States generally, to such a degree that trade conditions will not properly permit compliance with the terms and provisions of this lease," the court should construe the lease as relieving the lessee, if the general trade conditions in the slate industry were such as to prevent the production and sale of slate products at a profit.

3. The facts that the carrying on of a nonessential business at a profit during the great war, was practically impossible, though other trades of the country generally were prosperous, was sufficient to excuse payment of royalties under the lease.

Argued March 8, 1921. Appeal, No. 359, Jan. T., 1921, by defendants, from judgment of C. P. Northampton Co., Feb. T., 1919, No. 797, on verdict for plaintiff, in case of Bangor Peerless Slate Co. v. Bangorvein Slate Co. and Bangor Trust Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit for royalties. Before McKEEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $4,405.33. Defendants appealed.

*Errors assigned,* among others, were (1) portion of charge quoted in the opinion of the Supreme Court, and (6) refusal of judgment for defendant n. o. v.

*Everett Kent* and *John D. Hoffman,* for appellants.— In ascertaining the intention of the parties to a contract, the court is not confined to the language used, but may consider the circumstances surrounding the parties and their object in making the instrument: Perry v. Payne, 217 Pa. 252, 257; Thatcher v. Ry. Co., 35 Pa. Superior Ct. 615; Wilson v. Wornwag, 217 Pa. 82; Equitable Trust Co. v. Surety Co., 214 Pa. 159; Osler v. Bennett, 33 Pa. C. C. R. 193; Vulcanite Paving Co. v. Phila., 239 Pa. 524; Keiser v. Real Est. Co., 43 Pa. Superior Ct. 130; Tarentum Water Co. v. Tarentum Boro., 230 Pa.

148; Straus v. Wanamaker, 175 Pa. 213; Watson v. Blaine, 12 S. & R. 131.

*Aaron Goldsmith,* for appellee, cited: Tarentum Water Co. v. Tarentum Borough, 230 Pa. 148.

OPINION BY MR. JUSTICE FRAZER, April 11, 1921:

Plaintiff, in 1911, leased to E. J. Johnston, for a term of thirty years, a tract of land situated near Bangor, Northampton County, "for the purpose of mining and manufacturing all kinds of slate and slate material therein found and removing and selling the same," in consideration of the payment of stipulated royalties with a fixed minimum of $3,500 the first year and $4,000 a year for the next nine years, with a further increase in years following. In 1916 Johnson assigned the lease to the Bangorvein Slate Company, one of the defendants, which company, with the Bangor Trust Company as surety, executed and delivered to plaintiff a bond conditioned for the faithful performance of the covenants of the lease. The present action is against the assignee and its surety to recover the minimum royalty of $4,000 payable for the year 1918. The defense is that defendants are exempt from payment of royalties for that year by virtue of a provision in the lease relieving the lessee from performance of its covenants "if at any time during the term of this lease there should be a widespread business depression, affecting not only the slate trade in Northampton County, but the business of the United States generally to such a degree that trade conditions will not properly permit compliance with the terms and provisions of this lease."

In the spring of 1917 the United States declared war on Germany, followed by a declaration of war on other European countries, and to expedite preparations for, and the carrying on of, the war, all resources of the country were assembled and devoted to the single purpose of prosecuting the conflict to a successful conclusion. With

this end in view all business enterprises of the country were placed in one of two classifications, essential and nonessential. As a result, the business of all trades falling within the class designated as essentials was greatly increased while that of those classed as nonessentials were practically at a standstill, owing to inability to obtain materials, coal, workmen, transportation, etc. The slate business and building operations, except such as were necessary for government purposes, were placed upon the nonessential list and as a consequence of that action it is undisputed that more than 50 per cent of the quarries in the Bangor slate region and elsewhere ceased to operate, defendant's quarry being closed down during the year 1918, except for a few days in January. In the testimony we find the opinions of numerous witnesses (in fact it is not denied) that, though all trades classed as essentials were prosperous, there was such general wide-spread business depression affecting nonessential industries, including the quarrying and manufacturing of slate, during the year 1918, that defendant company was unable to properly comply with the terms and conditions of its lease and operate the leased quarry during that year at a profit.

The main question for determination is whether the fact that the carrying on of a nonessential business at a profit was practically impossible, though other trades of the country generally were prosperous, was sufficient to excuse payment of royalties under the clause of the lease above quoted. The trial judge charged there is "only one construction that can be placed on that clause; that it does not refer to the slate business of the United States, but to business generally in the United States," and that the burden is on defendant "to establish the fact that there has been a wide-spread business depression not only in the slate trade in Northampton County, but in business conditions of the United States generally." Under this instruction the jury found for plaintiff and defendants appealed.

In construing a contract the primary rule is to ascertain and give effect to the intention of the parties, and, in arriving at such intention, where the language is doubtful or susceptible of more than one construction, the court may consider the nature and situation of the subject-matter and the apparent purpose or object in making the contract in the form in which it was made or of using a particular expression or sentence. "The situation in which the parties stand, the necessities for which they would naturally provide, the conveniences they would probably seek to secure, and the circumstances and relations of the property in regard to which they have negotiated, are all elements in the interpretation of an ambiguous contract": Wilson v. Wernwag, 217 Pa. 82, 87. The apparent object the parties had in mind was to relieve the lessee from payment of the minimum royalty in case of a depression or stagnation in business to such degree "that trade conditions will not properly permit compliance with the terms and provisions of this lease." They recognized the fact that unforeseen business conditions might arise during the period of years covered by the lease which would make it inequitable and unduly burdensome for the lessee to, for a time, pay the minimum royalty. The most they could do was to provide that a merely local depression in the slate trade would not be sufficient to excuse nonpayment. Presumable there would, in that event, be a market elsewhere for the products of the quarries. If such depression, however, became general and resulted, for illustration, in the stagnation of those lines of industry in which slate is used, thus eliminating the outside as well as the local market, then the condition expressed in the lease should become effective. The object apparently was to relieve against conditions tending to deprive the lessee of a market for its products. If such market were cut off it does not seem of vital importance to inquire whether it was the result of all business of the country being depressed or whether only particular lines

of trade—in this case the "nonessentials"—were curtailed, or even whether the slate business of Northampton County only was depressed. The real inquiry is, did such lack of business from whatever cause and whatever its extent affect trade conditions in the slate industry in such manner as to prevent the lessee from properly complying with the terms of the lease? If we could conceive of such condition as a general business depression in all lines of industry with the single exception of the slate trade, which was exceptionally prosperous, could it be said that the lessee should be relieved from his covenant to pay royalties? And yet we would have a literal fulfillment of the very conditions upon the happening of which liability for rent should cease. Viewing the situation in the light of the object the parties apparently had in mind, we are clearly of opinion that under the facts of the case the court below construed the lease too strictly, and, although the word "slate" was omitted in referring to the "business of the United States generally," a proper construction of the entire clause contemplates defendant's release from payment of royalties if the general trade conditions in the slate industry were such as to prevent the production and sale of slate products at a profit and thus make compliance with the terms and provisions of the lease inequitable. That this condition existed is not disputed by plaintiff and it consequently becomes our duty to construe the lease in view of the admitted facts.

Accordingly we sustain the sixth assignment of error, reverse the judgment of the court below and direct that judgment be entered for defendants non obstante veredicto.