BROWN *v.* DEVINE

5-3868                                                                402 S. W. 2d 669

Opinion delivered May 16, 1966

*Drew & Holloway,* for appellant.

No brief filed for Appellee.

CARLETON HARRIS, Chief Justice. Belford Brown, appellant herein, is the owner and operator of Brown Aero Service, a commercial flying service providing the distribution of agricultural insecticides, chemicals, seed, and fertilizers by airplane. David W. Devine, appellee herein, a commercial pilot, was employed by Brown to operate one of appellant's aircraft in furtherance of providing this service, commencing employment in May, 1964. On July 24, 1964, Devine entered into a written contract with Brown, which provided that appellee would not,

"for a term of five (5) years, after the termination of

his employment by Belford Brown, engage in, directly or indirectly, the distribution of any fertilizers, seeds, insecticides, or chemicals, within a radius of fifty (50) miles of Eudora, Arkansas, and that he will not within five (5) years after the termination of employment by Belford Brown, render such services for wages or otherwise for any other flying service, directly or indirectly, either as employer or employee, within a fifty (50) mile radius of Eudora, Arkansas.''

In January, 1965, Devine terminated his employment with Brown, along with C. W. Stephens, Jr., likewise a pilot flying for appellant, and the two entered into agricultural spraying service in Chicot County under the name of McAlpine Brothers Farm Air Service. The new business concern acquired a number of Brown's customers, and appellant instituted suit to enjoin Devine and Stephens[1] from rendering services within 50 miles of Eudora, Arkansas, and also sought damages. On trial, the Chancellor found that the contract was reasonable as to area, but the 5-year restriction was unreasonable, and the complaint for injunction was dismissed.[2] From the decree so entered, appellant brings this appeal.

Mr. Brown testified that it takes considerable training in order to properly plant rice by airplane; that the pilot is required to know how much seed to carry in the airplane, the length of the fields, and ''how wide a swath he is going to take'' in order to plant the allotted amount of seed per acre. Brown testified that he gave Devine this training. Appellant also stated that special training is needed to apply fertilizers and that he trained Devine to do this type of work. According to the testimony of the witness, all pilots have access to his con-

---

[1] Some time after suit was commenced, Stephens was killed in an airplane crash, and the action was dismissed as to him.

[2] The court found, *inter alia*, that Devine had not been actively engaged in soliciting Brown's customers, and that there are "no trade secrets or secret formula associated with the agricultural aerial service or the business of Brown."

fidential records, which relate to special equipment used and the manner in which this equipment is to be used. Brown stated that a pilot has the name of every customer, the acreage of the customer, and maps of the farm layout. He testified that a 50-mile radius is used because that covered the area that he worked. As to the reason for the 5-year restriction, Brown said:

"* * * If this pilot leaves you and goes to one of your customers and gets that customer from you, it usually takes you a period of four to five years to ever get this customer back. * * *

" * * * A man that is in business has equipment that is, say, two years old,—use this for example—all right, you train these pilots to take a job, you show them what to do and they go into competition with you usually with new equipment. All right, that is a selling point to the farmer. This equipment that you buy will take you five years to pay for it, at the least. Now, these men move in here with new equipment and they tell the farmer, 'Well, we have got the latest, Brown is two years behind time.' "

He also stated that his pilots know where all of the farm acreage is located,

"how it lays, how it works, the way the farmer has it set up. And, it takes about a five year period for this land to move around where the acreage is in different places. In other words, crop rotation in maybe a new-ground that has been cleared up, it takes a period of that long for it to change up to where you might say would give both parties an even break at it again."

The testimony that rice planting from the air requires specialized training was disputed by witnesses offered by appellee. C. C. Gibson, a farmer of Jerome, who owned an airplane, testified that his rice crop was planted by a pilot who had no experience in sowing rice, but that the planting was entirely satisfactory. The witness testified that he knew of no trade secrets in the

business. Gibson said that he had used Devine along with Brown and several others, and that he had not been solicited by appellee. "I needed the work done and needed it done then and so I went and got him." Ernest Ellington, Jr., also a farmer of Jerome, testified that he knew of no secrets in agricultural flying; further, that he had used both Devine and Brown during the year, and that Devine did not solicit his business.

Appellee testified that he had operated as a commercial pilot since February, 1963, and had worked in Oklahoma before coming to Arkansas. He stated that he had previously applied cotton insecticides and fertilizers, and that seeding rice was similar to fertilizer application. According to his testimony, Brown only gave him "advice," and he only recalled one occasion on which appellant had flown with him.[3]

Further discussion of the facts is not necessary, since we agree with the Chancellor that the 5-year period of restriction set forth in the contract of employment is too broad, i.e., the restraint is for an unreasonable length of time, and is therefore void and unenforceable. It might be stated that the agricultural flying service is a proper field for this type of contract, and, in fact, we are convinced by the record that there is some merit in Brown's complaint, and that he has possibly suffered some damage, because of the acts of appellee. It may well be that a contract along this line, but limited to 2 years instead of 5, would be held reasonable, and thus enforceable. But we think, and have consistently held, that a 5-year restraint provision in contracts of employment is unreasonable. See *Marshall* v. *Irby*, 203 Ark. 795, 158 S. W. 2d 693; *American Excelsior Laundry Company* v. *Derrisseaux*, 204 Ark. 843, 165 S. W. 2d 598; *Little Rock Towel and Linen Supply Company* v. *Inde-*

---

[3]Appellee tendered testimony that he signed the agreement because he had already been working for Mr. Brown for two months, had turned down all other possible jobs, and his wife and children were on the way to make their home in Chicot County. The testimony was held inadmissible by the court.

*pendent Linen Service Company of Arkansas,* 237 Ark. 877, 377 S. W. 2d 34; and *McLeod* v. *Meyer,* 237 Ark. 173, 372 S. W. 2d 220. In the last case, we were requested, if we felt that the 5-year restriction was too long, to extend the protection for a lesser period of time. We declined, pointing out that courts have no authority to vary the terms of a written agreement, for to do so would simply be to make a new contract between the parties. We have repeatedly held that this will not be done. *Refrigeration Discount Corp.* v. *Haskew,* 194 Ark. 549, 108 S. W. 2d 908; *Roth* v. *Prewitt,* 225 Ark. 466, 283 S. W. 2d 155.

The Chancellor was correct in dismissing the complaint for an injunction.

Affirmed.