366 A.2d 902

**BOLDT MACHINERY & TOOLS, INC.**

v.

**Glenn W. WALLACE, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1975.

Decided Aug. 5, 1976.

Robert B. McCullough, Erie, for appellant.

T. Warren Jones, MacDonald, Illig, Jones & Britton, Erie, for appellee.

OPINION OF THE COURT

PER CURIAM.

This appeal is from a decree in equity enforcing a post-employment restraint on competition in a contract of employment. Mr. Justice EAGEN, Mr. Justice O'BRIEN, Mr. Justice ROBERTS and Mr. Justice POMEROY are of opinion that the covenant is enforceable to the extent indicated in the appended opinions of Mr. Justice POMEROY, speaking for himself and Justices

EAGEN and O'BRIEN, and of Mr. Justice ROBERTS, respectively.

Mr. Justice NIX and Mr. Justice MANDERINO would hold the covenant unenforceable in its entirety.

■ With regard to the territorial area in which competition is proscribed, Justices EAGEN, O'BRIEN, ROBERTS and POMEROY believe that the covenant is overly broad, and would therefore vacate the decree and remand the case for the entry of a decree limited to the sales territory appellant covered while employed by the appellee. IT IS SO ORDERED.

■ With respect to the duration of the restraint, Mr. Justice EAGEN, Mr. Justice O'BRIEN, and Mr. Justice POMEROY are of opinion that the covenant is enforceable, whereas Mr. Justice ROBERTS is of opinion that the decree should be remanded for modification by the trial court. There being no majority opinion as to the proper disposition of the decree insofar as it enforces the covenant as to time, this aspect of the decree of trial court remains undisturbed.

Costs to be equally divided between the parties.

JONES, C. J., did not participate in the consideration or decision of this case.

POMEROY, J., filed an opinion in support of affirming in part and vacating and remanding in part, which was joined by EAGEN and O'BRIEN, JJ.

ROBERTS, J., filed an opinion in support of modification.

NIX and MANDERINO, JJ., filed opinions in support of reversal.

POMEROY, Justice (in support of affirming in part and vacating and remanding in part).

This is a suit in equity [1] for enforcement of a covenant against post-employment competition contained in a contract of employment. The plaintiff, Boldt Machinery & Tools, Inc. [hereinafter "Boldt"] is a seller and distributor of industrial machinery and tools (lathes, drill presses, etc.) in an area comprised of western Pennsylvania, southwestern New York, and eastern Ohio. The defendant, Glenn Wallace, was employed by Boldt as a salesman in 1959 and was assigned a sales territory composed of portions of northwestern Pennsylvania and southwestern New York. On February 9, 1973, Wallace voluntarily terminated his employment. A contract entered into by the parties at the time Wallace was hired by Boldt contained a clause (paragraph 24) which provided:

> *"Upon termination of employment,* whether by resignation or dismissal, *Employee* shall return to Employer all price lists, lists of customers, stationery, catalogs, and other literature pertaining to Employer's business and *thereafter shall not engage directly or indirectly in the sale or distribution of any items regularly sold by Employer in the territory covered by Employer for a period of five (5) years."* (Emphasis added).

It is the italicized portion of this paragraph which Boldt seeks to enforce by this suit.

■ Upon leaving Boldt, Wallace was employed as a salesman of industrial machinery by Tri-State Machinery Company, a competitor of Boldt, in roughly the same territory he had covered for Boldt. Boldt contends that Wallace's activities on behalf of Tri-State constitute a

1. Jurisdiction of this appeal is in this Court by virtue of the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(4), 17 P.S. § 211.-202(4) (Supp.1975). [This appeal was filed prior to April 7, 1975, the effective date of Supreme Court Rule 73, reassigning appellate jurisdiction of equity cases to the Superior Court, see the Act of July 31, 1970, P.L. 673, No. 223, art. V, § 505, 17 P.S. § 211.505 (Supp.1975)].

breach of the restrictive covenant contained in paragraph 24, *supra,* of the contract between the parties. The chancellor agreed, and enjoined Wallace "from directly or indirectly selling or attempting to sell or distributing or attempting to distribute any items regularly sold by the plaintiff in the western Pennsylvania, southwestern New York and eastern Ohio areas for a period of five years from the date of this Order, even though the items he sells may be of different quality or purchase price than those sold by the plaintiff." Exceptions to the chancellor's adjudication were dismissed by a court en banc, and this appeal followed.[2] In this Court Wallace argues that he has not violated paragraph 24, and that, in any event, the restrictive covenant contained in that paragraph is unenforceable as an impermissible restraint on trade.

(1) Wallace first argues that he has not breached his promise to refrain from competing with his former employer. He contends that, as used in paragraph 24, the term "items" means "the same items", i. e., machinery of the same make and model as machinery he sold for Boldt, and that the machinery he is now selling for Tri-State is "more expensive, much larger and performs a completely different function than the machinery he formerly sold. . . ." (Appellant's brief, p. 6). The chancellor read the term "items" more broadly, however, construing it to mean "similar items" or all machinery in competition with the machinery which Wallace sold for Boldt; he found that some of the machinery Wallace now sells, without specifying which, is competitive with machinery he formerly sold.

2. The decree of the court en banc is not in form final, and therefore not appealable; while it dismisses the exceptions to the adjudication, it does not make final the decree nisi or otherwise contain the terms of a final decree. The parties have agreed, however, to accept the decree as final, and there is no indication on the record that the court en banc intended it to be not final Thus, we shall treat the decree as making final the decree nisi, as well as dismissing the exceptions to the adjudication.

■■ We agree with the chancellor that appellant's interpretation of the term "items" is too narrow. Paragraph 24 is to be interpreted in light of its obvious purpose, the protection of Boldt against a loss of customers and business as a result of Wallace's efforts on behalf of another seller of industrial machinery. *Bangor Peerless Slate Co. v. Bangor Slate Co.*, 270 Pa. 161, 113 A. 190 (1921); Restatement (Second) of Contracts § 228 & Comment *c* (Tent.Draft No. 5, 1970); Restatement of Contracts § 236 (1932).[3] So viewed, the words "any items regularly sold by [Boldt]" must be read as relating to any machinery which is competitive with the machinery regularly sold by Boldt, rather than items which are identically and completely alike. At trial, Boldt offered evidence that it and Tri-State sold some of the same brands of machinery and solicited many of the same customers, and that Tri-State had taken accounts from Boldt in the past. Wallace himself admitted that he was now calling on some of the same customers he had solicited for Boldt, and that he was now selling some of the same "small tools" he had sold for Boldt. Our review of the record satisfies us that there was ample evidentiary support for the chancellor's finding that some of the machinery Wallace now sells is in competition with machinery he sold formerly.

■■ (2) Wallace's second argument is that paragraph 24 is unenforceable as an impermissible restraint on trade. A post-employment restraint on competition is enforceable if it is ancillary to an employment relationship between the parties, is designed to protect a legitimate business interest of the employer, and is reasonably limited in duration and area. *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 351 A.2d 250, 252 (1976); *Girard Invest-*

3. See generally *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 580 (3d Cir. 1973); *Pritchard v. Wick*, 406 Pa. 598, 601, 178 A.2d 725 (1962); *Philadelphia v. Philadelphia Transportation Co.*, 345 Pa. 244, 250, 26 A.2d 909 (1942).

*ment Co. v. Bello,* 456 Pa. 220, 318 A.2d 718 (1974); *Bettinger v. Carl Berke Associates, Inc.,* 455 Pa. 100, 314 A.2d 296 (1974); *Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967).[4] Wallace argues that the second and third aspects of this test are here lacking.

With respect to protectible interest, appellant contends that Boldt is not entitled to any protection from competition by him because the company did not provide him with any specialized training or skills or with access to any trade secrets. But this argument is based upon too restrictive a view of the interests an employer may legitimately seek to protect by means of such restraints. As we recently iterated, an employer has a protectible interest in the customer goodwill developed by its employees. *Sidco Paper Company v. Aaron, supra* at 591–594, 351 A.2d at 252–54.[5] The instant record contains evidence that while he was employed by Boldt, Wallace regularly had direct, personal contact with Boldt's customers at the customers' places of business, that this contact was an important element in making sales of machinery, and that Wallace's calls on the trade constituted

4. *See also* Blake, Employee Covenants Not to Compete, 73 Harv. L.Rev. 625 (1960); 6A Corbin, Contracts § 1394 (1951).

   Although our cases have for the most part been concerned with the time and area aspects of the reasonableness of post-employment restrictive covenants, such restraints should be reasonable in terms of the activities of the employee which are prohibited. As Professor Blake puts it:

   "The traditional dimensions of a restraint have been those of duration and geographic area. The 'activity' dimension was not an issue in the earliest cases; a trade was a trade, set apart by separate guilds and the institution of apprenticeship, and there was no ambiguity in a promise not to 'exercise the trade of a baker' or 'enter into competition.' But division of labor and specialization now make it of utmost importance that a restraint define carefully the activities in which the employee is not to engage." Blake, *supra* at 675.

5. See *Blake, supra,* note 1 at 653–67. See also *Bettinger v. Carl Berke Associates, Inc.,* 455 Pa. 100, 314 A.2d 296 (1974); *Jacobson & Co. v. International Environmental Co.,* 427 Pa. 439, 235 A.2d 612 (1967).

the only contact between Boldt and many, although not all, of its customers in Wallace's sales territory. We are satisfied that the chancellor was justified in concluding that paragraph 24 protects Boldt's interest in customer relationships developed by Wallace. The absence of a formal specialized training given to Wallace does not deprive this interest of protectibility.

Wallace also attacks the duration of the restraint as too long and the area within which competition is prohibited as too widespread. The reasonableness of the temporal and geographic aspects of a restrictive covenant must be determined in light of the nature of the employer's interest sought to be protected. The time should be no longer and the area should be no greater than are reasonably necessary for the protection of that interest. Helpful observations as to the permissible duration of a provision designed to protect the employer's interest in customer relationships are contained in Professor Blake's article:

"In determining whether a restraint extends for a longer period of time than necessary to protect the employer, the court must determine how much time is needed for the risk of injury to be reasonably moderated. When the restraint is for the purpose of protecting customer relationships, its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers. If the selling or servicing relationship is relatively complex, a longer period may be called for. Courts seldom criticize restraints of six months or a year on the grounds of duration as such, and even longer restraints are often enforced. When the selling relationship is important but still simple, as when consumers' goods are being sold by house to house calls over a route, a very short period,

however, might provide adequate protection." Blake, *supra,* note 1 at 677–78. (Footnotes omitted).

At another point the following additional comment is made:

"Frequency of contact may also control or affect the permissible period of the restraint. Paradoxically, if the contact is less frequent, a longer period of restraint may be reasonable. Here the controlling idea is that the employer should be given a reasonable period of time in which to overcome the former employee's personal hold over the client, usually by putting another man on the job. The employer's new representative should be given a reasonable opportunity to demonstrate to the customer that he will perform satisfactorily and to establish a working relationship. Thus, the less frequent the contacts, other factors being equal, the longer the period needed by the new employee." Blake, *supra,* note 1 at 659. (Footnote omitted).

Boldt offered testimony that although some customers are visited every week, others are called upon no more often that once every six months. The record also reveals that Boldt handles machinery manufactured by ninety-seven manufacturers, that Boldt sales personnel generally deal with plant foremen and engineers rather than purchasing agents, wherefore some technical knowledge of the machinery is desirable, and that it is generally important that salesmen be well acquainted with the capabilities and limitations of the machinery they handle as well as with the needs of each customer.

What emerges from the record before us is a picture of a wide-ranging frequency of contact between salesman and customer and a relationship between them which is rendered complex by the nature of the products sold and the uses to which they may be put. While a five year anticompetitive covenant in a contract of employment either approaches or exceeds the bounds of rea-

sonableness in most settings,[6] restraints of this duration have been upheld in a wide variety of situations by courts in other jurisdictions.[7] After a careful scrutiny of the record we have concluded that the evidence supports the chancellor's determination that effectiveness as a salesman of the industrial machinery here involved is sufficiently difficult to achieve, and customer contact is here sufficiently infrequent, as to justify a five year restraint for the employer's protection.[8] While we would have preferred the period to be shorter, we cannot on this record declare that, *as a matter of law,* paragraph 24 is unreasonable as to time.

6. In *Barb-Lee Mobile Frame Co. v. Hoot,* 416 Pa. 222, 206 A.2d 59 (1965), a five year post-employment restraint was upheld, but it does not appear that the employee challenged the duration of the restraint in that case. In *Ross v. Houck,* 184 Pa.Super. 448, 136 A.2d 160 (1957), a five year restraint ancillary to the sale of a business was upheld. As we observed in *Alabama Binder and Chemical Corp. v. Pa. Industrial Chemical Corp.,* 410 Pa. 214, 189 A.2d 180 (1963), however, restraints on trade which are incident to sales of businesses are subject to a less stringent test of reasonableness than are restraints incidental to contracts of employment. *Alabama Binder* was another case involving a five year restraint ancillary to the sale of a business. The lower court had granted a preliminary injunction enforcing the covenant, and this Court affirmed, finding apparently reasonable grounds for the lower court's action.

7. See, *e. g., Cockerill v. Wilson,* 51 Ill.2d 179, 281 N.E.2d 648 (1972); *Bauer v. Sawyer,* 8 Ill.2d 351, 134 N.E.2d 329 (1956); *Miller v. Frankfort Bottle Gas, Inc.,* 136 Ind.App. 456, 202 N.E.2d 395 (1964); *Bradford v. Billington,* 299 S.W.2d 601 (Ky.1957) (6 years); *Lareau v. O'Nan,* 355 S.W.2d 679 (Ky.1962); *Ramsey v. Mutual Supply Co.,* 58 Tenn.App. 164, 427 S.W.2d 849 (1968); *Marine Contractors Co., Inc. v. Hurley,* 310 N.E.2d 915 (Mass. 1974); *Vermont Electric Supply Co. v. Andrus,* 132 Vt. 195, 315 A.2d 456 (1974). *See generally* Annotation, 41 A.L.R.2d 15, § 119 (1955).

But see *Brown v. Devine,* 240 Ark. 838, 402 S.W.2d 669, 671–72 (1966) (five year period is *per se* an unreasonable duration for a post-employment restraint); *Wood v. May,* 73 Wash.2d 307, 438 P.2d 587, 590–91 (1968); Annotation 41 A.L.R.2d 15, § 120 (1955).

8. Perhaps inadvertently, the chancellor enforced the restrictive covenant for a period of five years from the date of the decree, rather than the date Wallace left Boldt. On remand the period of the injunction should be measured from the latter date.

█ Turning to appellant's challenge to the geographic extent of the restraint, it will be noted that paragraph 24 pertains to the employer's total trade territory, which the evidence established as western Pennsylvania, southwestern New York and eastern Ohio. The chancellor enforced this provision to its full extent. In so doing we are of opinion that the chancellor erred. An employer's interest in the customer relationships developed by an employee whose contact with customers occurred at the customers' premises extends no farther than the sales territory to which the employee was assigned. Blake, *supra*, note 1 at 680; see *Albee Homes, Inc. v. Caddie Homes*, 417 Pa. 177, 207 A.2d 768 (1965). Thus, a restrictive covenant designed to protect this interest is valid only insofar as it is limited to that area. If a covenant which is limited in area is still too widespread, the court should enforce the restraint, but only to the extent of the employee's sales territory.[9] As we said recently in *Sidco Paper v. Aaron*, supra at 595, 351 A.2d at 254, "[w]here [a covenant not to compete] imposes restrictions broader than necessary to protect the employer, we have repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions which are reasonably necessary for the protection of the employer. [citations omitted]." [10]

█ At trial it was established that, while employed by Boldt, Wallace covered an area comprised of Chautauqua County, New York, a portion of Erie County, Pennsylvania, and all of the northwestern Pennsylvania counties of Warren, Venango, Forest, Elk, and Cameron. It is only in this geographical area that Boldt is now enti-

---

9. Compare *Reading Aviation Service Inc. v. Bertolet*, 454 Pa. 488, 311 A.2d 628 (1973), where we held that a restrictive covenant in an employment contract which was without limitation in both time and space was unenforceable in its entirety.

10. See Blake *supra* note 1 at 681–84; VIA A. Corbin, Contracts § 1394 at 104 (1951). *See generally* Annotation, 61 A.L.R.3d 397 (1975).

tled to protection from Wallace's competition. Since it does not appear from the record precisely how much of Erie County Wallace had covered for Boldt, the chancellor's decree must be vacated insofar as it enforces the geographic term of the covenant as written, and the case remanded for a determination of the boundaries of Wallace's sales territory for Boldt and for the entry of a decree in light of that determination.

EAGEN and O'BRIEN, JJ., join in this opinion.

ROBERTS, Justice (in support of modification).

I agree that the decree should be vacated and the case remanded, but I do not agree that the five year duration of the postemployment restraint is reasonable.

Employee covenants not to compete will be enforced "only so far as reasonably necessary for the protection of the employer." *Sidco Paper Company v. Aaron,* 465 Pa. 586, 594, 351 A.2d 250, 254 (1976); *Bettinger v. Carl Berke Associates, Inc.,* 455 Pa. 100, 314 A.2d 296 (1974); *Reading Aviation Service Co. v. Berolet,* 454 Pa. 488, 311 A.2d 628 (1973). In order to obtain enforcement of a covenant of this duration, appellee would have to show that the five year restraint was necessary to protect appellee's interest in customer relationships developed while appellant was employed by appellee. In my view, the necessity for such a lengthy restraint is not established in the record.

The facts in the record create serious doubt whether appellant's activities with his new employer have adversely affected appellee. A representative of appellee testified, "[A]ppellant knows the volume of business we have done. I can't see that is hurting us competitively, no." Moreover, the record reflects that price lists were freely circulated by appellee and that appellant's new employer had contacts with the same customers as appellee in the past. This indicates that appellant's knowl-

edge of appellee's customers and prices caused appellee no harm.

The majority in sustaining the five year restraint is giving the past employer far greater protection than the record establishes is necessary. In doing so it restrains competition and unfairly deprives appellant of his livelihood. The five year restraint should be substantially reduced to afford only that protection which the record supports as necessary.

NIX, Justice (in support of reversal).

I would reverse the lower court's decree because I do not believe that a covenant is justified to protect an interest in customer goodwill acquired through the efforts of an employee unless the employee's compensated service consisted of participation in the creation of goodwill; a goodwill that is likely to follow the employee upon his separation from the business.[1] In the instant case it is clear to me that Boldt's customer relations and subsequent sales depended almost entirely upon whether the uses and technical specifications of its industrial machinery matched the requisite needs of its potential customers, rather than the relationship existing between Boldt's representatives and the prospective customers.

A review of the record indicates that Boldt was engaged in the business of selling sophisticated industrial machinery manufactured by other companies to businesses that would use these machines to manufacture other machines and tools. Boldt's sales people dealt almost ex-

---

1. I first articulated this view in my dissent in *Sidco Paper Company v. Aaron*, 465 Pa. 586, 607, 351 A.2d 250, 262 (1976) (Dissenting Opinion of Nix, J.):

I accept the view that a covenant is justified to protect an interest in customer goodwill acquired through the efforts of an employee, "if a part of the employee's compensated service consists in the creation of the goodwill . . . ., *a goodwill that is likely to follow the person of the employee himself.*" 6A Corbin on Contracts, § 1394, 100 (1962) (emphasis supplied). It is under this reasoning I conclude that Sidco did have a protectible interest.

clusively with engineers and tool and die makers within their customers' businesses. When a potential customer decided to produce a tool the customer would know exactly the specifications of the machine it needed to produce its product. Thus, appellant's job was to know the lines of equipment Boldt carried and their specifications.

It is apparent, however, that no matter how much time appellant spent developing customer contacts for Boldt, if the particular machine Boldt offered did not meet the specifications of the client, the sale would not be consummated. Indeed, appellant testified that since he began working for Boldt's alleged competitor, Tri-State Machinery Company, he had attempted to sell some of Tri-State's machines to businesses he had dealt with for Boldt, but was unsuccessful because Boldt carried the particular machinery which met their needs. Thus, it appears that regardless of any personal contact or customer relations that may or may not have been developed by appellant for Boldt, the critical determination was whether Boldt carried the particular equipment its potential clients needed.[2]

Consequently, because of the particular nature of its business, I do not believe that Boldt had a protectible interest in its customer relations sufficient to sustain a covenant not to compete.

MANDERINO, Justice (in support of reversal).

I must express my disagreement with the approach to restrictive covenants taken by the opinion in support of affirmance, and also with the approach taken by Mr. Justice Roberts in his opinion. Both of these opinions in effect hold that it is *impossible* for an employer to write an unenforceable covenant. Even if an employer writes

2. The Chancellor and appellee placed great emphasis upon the fact that Boldt and Tri-State, appellant's new employer, are competitors. What both appear to overlook is that the consummation of the anticipated sale does not hinge upon customer relationships but the functional capacity of the product.

a covenant which constitutes an illegal restraint of trade, the employer need not be concerned. This Court will act as the employer's legal advisor, rewrite the illegal covenant, and make it legal. The entire notion is preposterous, and has no place in our free enterprise system.

The time duration in the covenant before us is five years. There is absolutely no justification for such a time period. It is unnecessarily long and constitutes an illegal restraint of trade. I therefore cannot agree with the conclusion that five years is permissible in this case, nor can I agree with the opinion of Mr. Justice Roberts that the courts should rewrite the covenant making what is illegal legal.

Both the opinion in support of affirmance by Mr. Justice Pomeroy, and the opinion by Mr. Justice Roberts agree that, as to the territory it covers, the covenant *is* an illegal restraint of trade as written. Once again, however, both opinions sanction a judicial rewriting of the illegal covenant to make it legal. I cannot subscribe to such a procedure. It is not a difficult task for an employer to write a legal restrictive covenant into the employment contract. Employers have no incentive to do so, of course, so long as this Court says to such employers: "Write any covenant you wish—if it's illegal, we'll act as your counsel and rewrite it." The rewriting, of course, takes place after a period of time during which the illegal restraint of trade has already intimidated the employee. As I stated in my dissenting opinion in *Sidco Paper Company v. Aaron*, 465 Pa. 586, 351 A.2d 250 (1976):

"Whether a restrictive covenant is an illegal restraint of trade must be determined both at the time the covenant is made and also at the time it *is to be enforced*. If the covenant is unreasonable when made, the illegal restraint begins immediately not when the employee ceases employment. Such a covenant perpet-

ually hovers over the employee, who must act at his peril when considering termination of employment because he does not know whether he will be faced with a law suit challenging his right to obtain new employment, and if challenged by a law suit, whether he will suffer economic harm because a court determines *ex post facto* that he violated a covenant, the limitations of which were not clearly spelled out until after a burdensome and costly law suit. Thus, an employee faced with a covenant barring him from competing anywhere with a former employer lives under a constant threat that if he finds new employment, even in an area not covered by his present employer, he will be faced with litigation. A covenant that is unreasonable *when made* has the effect of illegally restraining trade from that moment, for it is then that it begins its coercive effect on the employee's freedom of choice." (Emphasis in original.)

465 Pa. at 609, 351 A.2d at 263.

The covenant in this case constituted an illegal restraint of trade when written. For a period of time it may have served to restrict the employee by an illegal intimidation. This Court should not sanction such a practice, and the covenant in this case should be denied enforcement.