487 A.2d 947

**ROBERT CLIFTON ASSOCIATES, INC., A Corporation, Appellant,**

v.

**Thomas F. O'CONNOR, An Individual, and O'Connor, O'Connor & Lordi, Ltd., A Corporation.**

Superior Court of Pennsylvania.

Argued Aug. 8, 1984.

Filed Jan. 25, 1985.

Reargument Denied April 8, 1985.

248

Edward G. O'Connor, Pittsburgh, for appellant.

Paul G. Walker, Jr., Pittsburgh, for appellees.

Before BROSKY, WATKINS and HESTER, JJ.

PER CURIAM:

In February, 1973, appellee, Thomas F. O'Connor, was hired as an employee of appellant, Robert Clifton Associates, Inc., an employment agency located in Greentree, Pennsylvania. Appellant is a closely held corporation with Robert Gerbi and Gabriel Rocco as its sole shareholders. On April 17, 1973, appellee O'Connor and appellant entered into a "non-compete" agreement, which provides in pertinent part, as follows:

> **Restrictive Covenant.** For a period of 12 months after the date of termination of this Agreement, the Employee will not, within a radius of 75 miles of any city in which Robert Clifton Associates, Inc., owns, maintains or operates a personnel consulting service, directly or indirectly

own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by the Company at the time of the termination of this Agreement. However, if the Employee is discharged by reason of lack of work by the Company, then the above-mentioned restrictions shall not apply.

During this same period, appellant's employees were requested to execute similar agreements. Moreover, prior to the execution of this document, at least one of appellant's employees had been requested to sign a covenant which restricted employees after termination from competing with appellant for a period of six months and within a fifty mile radius of appellant's business.

Appellee O'Connor, at the beginning of his employment with appellant, was paid a guaranteed salary of $500.00. After signing the aforementioned agreement, O'Connor was placed on a draw with a 33⅓% commission on placements. This draw was subject to sales. O'Connor continued in the employ of appellant wherein he became one of appellant's top employees until his resignation on January 13, 1984. He immediately started his own employment agency, O'Connor, O'Connor & Lordi, L.T.D. in Carnegie, Pennsylvania, approximately 6 miles southwest of Greentree. In operating his own business, two former clients O'Connor had serviced when he was with appellant transferred their search contracts to him. O'Connor had contacted other Clifton clients following his departure.

The lower court, upon appellant's petition for a temporary injunction based upon the terms of the restrictive covenant, granted appellant's request for a temporary injunction but only to the extent of a four-month period and confined to Allegheny County. The lower court gave the following reasons for modifying the covenant:

"The plaintiff [appellant] is not alleging trade secrets or customer lists but is basing the allegations of irreparable harm on a few incidents wherein former customers of

Clifton have elected to contact O'Connor. Contrariwise, the defendant [appellee, O'Connor] is a young man, aged 33, with prior experience in the personnel field. If an injunction issues for any sizable period of time, the defendant will suffer serious loss of income. The Court, also, must consider the actions of the individual officers of plaintiff in approaching the defendant to start a new business. Such activity indicates the lack of reliance on the part of the plaintiff to the alleged non-compete agreement. There is an inconsistency between the offers or interest of the individual officers of plaintiff in setting up a competing business and the instant lawsuit to enjoin the defendant from operating his own agency.

It is our further conclusion that, based upon the character of the placement agency business, plaintiff's prayer for relief is excessive and punitive in nature. Corporate management receives referrals from a variety of sources and little is required in the way of special education or training to enter the business. In this case, O'Connor had already acquired experience before affiliation with Clifton.

Therefore, we find that a non-compete agreement was signed by the defendant, ignored in part by plaintiff, and seeks excessive relief. Plaintiff was grated (sic) a four-month period to notify its clients that O'Connor was no longer a member of the firm and to seek to retain their business."

Appellant has thus filed the present appeal seeking to have the full restrictive covenant embodied in the temporary injunction. In asserting this position, appellant has raised the following two issues: 1) whether the lower court erred in allegedly considering facts not in the record; and 2) whether the lower court erred in concluding that the duration, geographic scope and activities governed by the restrictive covenant were unreasonable.

Regarding appellant's first issue, appellant specifically contends that there were insufficient facts of record to: 1) establish that appellee O'Connor would suffer a serious loss

of income if enjoined for any lengthy period of time; 2) find that the officers of appellant breached the restrictive covenant themselves by offering to go into business with appellee O'Connor; and 3) that appellee was the only active member of O'Connor, O'Connor & Lordi, L.T.D.

■ Regarding whether the lower court could have found that appellee O'Connor would suffer substantial financial losses if the terms of the restrictive covenant were enforced, appellee O'Connor testified that he had obtained a forty thousand dollar ($40,000.00) line of credit for his business and thus it was only reasonable for the lower court to conclude that appellee O'Connor would sustain a serious loss of income if he were enjoined from operating his competing business for a period of one year.

■ Appellant next contends that the lower court erred in concluding that appellant's sole shareholders themselves had breached the restrictive covenant by negotiating with appellee O'Connor to form a personnel consulting service with O'Connor. This testimony is as follows:

"Q. Mr. Gerbi, did you, in conjunction with Robert Clifton, ever approach Tom O'Connor with the idea of starting a separate firm with Robert Clifton as a partner?

A. Yes.

Q. When was that, sir?

A. I assume 198—I don't remember if it's '81—'82 or '81. Several times.

Q. Now, was that firm to be in competition with Robert Clifton?

A. I don't remember if it was going to be in direct competition or not.

Q. This was in '81, '82 or '83 you said?

A. To the best that I can remember now, we talked to—talked to Tom about several business ventures in his employment, either, I don't know if it would be in direct competition."

Appellant contends that the lower court should not have considered the deposition testimony but should have only considered the evidence elicited at the Preliminary Hearing. Pa.R.C.P. 1531(a) provides as follows:

**Rule 1531. Special Relief. Injunctions**

"(a) A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require."

In interpreting Rule 1531(a), our Supreme Court has stated that "Rule 1531(a) of the Rules of Civil Procedure, 12 P.S. Appendix permits a court to rely upon allegations in the complaint, affidavits attached thereto, preliminary objections, (and arguments of counsel) in determining whether or not a preliminary injunction should issue." *Minit-Man C.W. Cork v. B. & C.T. Council,* 411 Pa. 585, 589, 192 A.2d 378, 380 (1963).

Therefore, it was not improper for the lower court to consider Robert Gerbi's deposition testimony.

Appellant's third contention is that there was no evidence to conclude that "the only active member of appellee's new corporation was O'Connor." However, this contention is without substance for O'Connor testified in his deposition that there were no other full-time employees except himself and his staff included only two part-time women and his partner who worked approximately one day a week.

■ The final argument raised by appellant is much more difficult. Appellant claims that the duration, geographic scope and activities governed by the restrictive covenant

were reasonable. In a case factually analogous to the present one, our Supreme Court reviewed the standards to be applied to restrictive covenants and stated as follows:

"Appellants argue that the record fails to establish irreparable harm. They note that appellees were only able to demonstrate actual damages in the amount of $427.00 in loss of commission and argue that this meager amount cannot possibly constitute irreparable harm. This reasoning however, ignores the nature of the violation herein involved. It is not the initial breach of a covenant which necessarily establishes the existence of irreparable harm but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to the former employer's business that constitutes the justification for equitable intervention.

This misconception is also reflected in appellants' further contention that their continued sales to accounts on the prohibited list would not cause irreparable harm because of their agreement to maintain a record of earnings generated by such sales. It is asserted that since any loss would be ascertainable, it would be compensable in damages.

The covenant seeks to prevent more than just the sales that might result by the prohibited contact but also the covenant is designed to prevent a disturbance in the relationship that has been established between appellees and their accounts through prior dealings. It is the possible consequences of this unwarranted interference with customer relationships that is unascertainable and not capable of being fully compensated by money damages. It is for this reason we noted in *Bettinger v. Carl Berke Assocates, Inc.,* 455 Pa. 100, 103, 314 A.2d 296, 298 (1974), that where a covenant of this type meets the test of reasonableness, it is prima facie enforceable in equity. *See also Jacobson & Company v. International Environment Corp.,* 427 Pa. 439, 452, 235 A.2d 612, 620 (1967). In *Sidco, supra,* we again recognize the employer's right to protect, by a covenant not to compete,

interests in customer relationships that have been acquired through the efforts of the employee. There, quoting from Professor Blake, we described the nature of the interest as follows:

'In almost all commercial enterprises ... contact with customers or clientele is a particularly sensitive aspect of the business ... In most businesses ... as the size of the operation increases, selling and servicing activities must be at least in part decentralized and entrusted to employees whose financial interest in the business is limited to their compensation. The employer's sole or major contact with buyers is through these agents and the success or failure of the firm depends in part on their effectiveness.... [t]he possibility is present that the customer will regard, or come to regard, the attributes of the employee as more important in his business dealings than any special qualities of the product or service of the employer, especially if the product is not greatly differentiated from others which are available. Thus, some customers may be persuaded, or even be very willing, to abandon the employer should the employee move to a competing organization or leave to set up a business of his own....

The employer's point of view is that the company's clientele is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property. Certainly, the argument goes, the employee should have no equity in the custom which the business had developed before he was employed. Similarly, under traditional agency concepts, any new business or improvement in customer relations attributable to him during his employment is for the sole benefit of the principal. This is what he is being paid to do. When he leaves the company he should no more be permitted to try to divert to his own benefit the product of his employment than to abscond with the company's cash-

box.' Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 653–54 (1960).

It is clear that the interest sought to be protected by the issuance of the preliminary injunction was that relationship which had been established on behalf of appellees' companies through the efforts of the former employee, Crochiere. This is clearly an interest which is incapable of adequate protection by monetary damages and the use of equitable relief is needed to avoid the threatened harm."

*John G. Bryant Co. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 7–9, 369 A.2d 1164, 67–68 (1977).

■ In the present case, the evidence reveals that O'Connor had over his eleven years with appellant serviced a clientele that numbered in the hundreds. Further, while appellant had only lost two of its clientele, these being Mobay Chemical Corporation and Leybold-Heraeus Corporation, O'Connor had admitted that he had been in contact with a number of appellant's clients since his resignation. Thus, as was the case in *Bryant, supra,* appellant faces possible incalculable damages if appellees are permitted to violate the terms of the restrictive covenant. However, our Supreme Court has stated an additional criteria in assessing whether the restrictive covenant in the present case is reasonable:

"[w]hen the restraint is for the purpose of protecting customer relationships, [as it is here], its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers." *Boldt Machinery & Tools, Inc. v. Wallace,* 469 Pa. 504, 513, 366 A.2d 902, 907 (1976) quoting from Blake, Employee Covenants Not to Compete, 73 Harv.L.Rev. 625, note 1 at 677–78.

■ Due to the hundreds of clients that O'Connor was servicing for appellant, it cannot be said that it was reasonable for appellant to put a new man into O'Connor's position

and for that new employee to have a reasonable opportunity to demonstrate his effectiveness to appellant's clients within the four month period provided for in the lower court's order.[1]  Therefore, we find based upon all the criteria expounded by our Supreme Court, the terms of the restrictive covenant were reasonable.

Reversed.  Terms of the restrictive covenant limiting appellees, directly or indirectly not to own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by appellant within a radius of 75 miles of Greentree, Pennsylvania, are to apply for a period of one year from April 25, 1984.

BROSKY, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring and dissenting:

Although the restrictive covenant in this case was entered into after the initial date of employment and might therefore be found unenforceable, (See e.g. *George W. Kistler, Inc. v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975)), I agree with the conclusion implicit in the majority opinion that this covenant was supported by sufficient consideration since it was entered into at the time Mr. O'Connor began to earn a commission.  See *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279 (1974); *Jacobson & Co. v. International Environment Corp.*, 427 Pa. 439, 235 A.2d 612 (1967).

However, it is well established that restrictive covenants are enforceable only if they are reasonably limited as to duration of time and geographical extent.  See *Jacobson & Co., supra; John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164 (1977).

1.  The lower court opined that the law only required that the company who is attempting to enforce its restrictive covenant have reasonable time to contact the clients of its former employee and communicate to them that it desires to retain their business.  We believe the term "to demonstrate his effectiveness to the clients" to mean much more than the lower court's interpretation.

I believe that the one year period imposed by the restrictive covenant in this case is excessive given the relevant facts and keeping in mind that as a society our public policy favors free enterprise. Within a six month period appellants could contact the clients whom Mr. O'Connor had served and try to convince them to continue to do business with the firm. To prevent Mr. O'Connor from starting a competing business for a year provides appellants more protection than necessary.[1]

As we explained in *Harry Blackwood, Inc. v. Caputo*, 290 Pa.Super. 140, 434 A.2d 169, 171 (1981):

[w]hen the restraint is for the purpose of protecting customer relations, [as it is here,] its duration is reasonable only if it is no longer than necessary for the employer to put a new man on the job and for the new employee to have a reasonable opportunity to demonstrate his effectiveness to the customers.

I, therefore, dissent from that position of the majority opinion that upholds a one year restriction and would instead impose a six month restriction.

---

1. Compare *John G. Bryant Co., supra* in which customer contact was infrequent. The nature of the employment industry would seem to mandate more frequent client contact.