576 A.2d 1118

**HARSCO CORPORATION, Appellant,**

v.

**Richard A. KLEIN and The Burke Company, Appellees.**

Superior Court of Pennsylvania.

Argued March 20, 1990.

Decided June 20, 1990.

J. Robert Kirk, Washington, D.C., for appellant.

Dennis J. Lewis, Pittsburgh, for appellees.

Before CAVANAUGH, DEL SOLE and HUDOCK, JJ.

CAVANAUGH, Judge:

This issue in this case is whether the court below properly denied the motion for a preliminary injunction filed by the appellant, Harsco Corporation.

In July, 1970, Richard A. Klein, one of the appellees herein, commenced working for Patent Scaffolding Company, a subdivision of Harsco Corporation which conducts business on a world-wide basis. Patent Scaffolding Company is engaged in the business of marketing concrete shoring and forming systems as well as scaffolding systems and related products and services. Patent Scaffolding has branch offices located throughout the United States, including a branch in Pittsburgh.

Mr. Klein resides in Allegheny County and was hired at the Pittsburgh branch office as a sales engineer, originally working as a salesman of concrete forming products. Klein was promoted from salesman to branch manager of Patent Scaffolding's Pittsburgh office in January, 1974. In February, 1983 he was promoted to regional manager in charge of Patent Scaffolding's central region which covered a large multi-state area. Finally, in January, 1989 he was assigned the position of national sales manager and was one of only two national sales managers employed by Patent Scaffolding in the United States. As national sales manager, Klein's position included the exploration of new markets for the products and services provided by his employer.

Mr. Klein became dissatisfied with his employment in 1989 because his salary was not increased, although his responsibilities as national sales manager were. In addition, he disagreed with senior management as to the direction that a new sales program was to take.[1] On July 31,

1. Mr. Klein testified that during the first seven months of 1989, he received only his base salary. He had asked for an increase of $10,000.00 and received nothing. In years prior to 1989, he always received a raise without asking. He further testified:

Q. Did you receive any review at all or any raise at all in May of 1989 in this new position of national sales manager?
A. No. I was promised in January I would get it in May. I did not.
Q. You said that you felt, in your other testimony by the plaintiffs, that you were being set up for a scapegoat. Would you explain why you felt that way?
A. Patent has developed a posture in the last two or three years where they have sacrificed a few people for numbers and I felt that if the resources were withheld to make this plan work, and it was clear to us who were trying to manage the program that resources were being withheld, that sooner or later there had to be somebody to take a fall. We were the obvious ones. We were in our 50's and that seemed to be getting to be a bad time to be a scapegoat.
Q. What prompted you to consider leaving Patent Scaffolding?
A. That was one of the major reasons.
Q. Were there any other reasons?
A. Yes.
Q. What are they?
A. I felt that I was cut out of the mainstream. I had been a manager since 1974. Now I had the name of a manager and no authority to get a job done that I was charged to do, absolutely no authority. I managed very well and very profitably for Patent

1989 Klein retired from the company where he had worked for some nineteen years. At that time he was fifty-seven years old. Shortly thereafter, he started working for The Burke Company, also an appellee herein, which is in direct competition with the appellant in the Pittsburgh area where Klein was to work. Mr. Klein confirmed his employment with Burke by letter dated August 4, 1989.

The dispute between the parties has its genesis in an employment agreement between Patent Scaffolding and Klein dated September 8, 1970, although Klein signed it on July 19, 1970. He started working for Patent Scaffolding on July 16, 1970. In the employment contract Mr. Klein agreed, *inter alia:*

> To forebear, during my employment and for all future times subsequent thereto, from disclosing to any person, firm or corporation any confidential information or trade secrets pertaining to the business methods or procedures, apparatus or methods of manufacture or otherwise used by my Employer in conducting its business and that I will not use same on my own behalf except in the course of my employment with my Employer.
>
> .    .    .    .    .
>
> For a period of two and one-half years after the termination of my employment with Employer, I will not, within a radius of *100 miles* of Pittsburgh, Pa. (being part of the area in which the Employer is conducting its business) directly or indirectly own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or conduct of any business similar to that engaged in by the Employer. During the period herein above stated, I will not divert or attempt to divert from the Employer, any customers or accounts, or hire any of the Employer's employees. In the event I violate or threaten to violate the provisions of this paragraph, the Employer may en-

Scaffolding for 15 years. I made them millions of dollars in profit. They gave me a bigger job and with greater responsibility, no raise and no authority to accomplish it at all.

join such violation or threatened violation. I represent to the Employer that the restrictions recited above are reasonable both to time limitations and geographical areas because of my knowledge of the nature of the Employer's business and the marketing areas of its products.

The agreement expressly stated that the parties intended to be legally bound by its terms.

In August, 1989 appellant filed a complaint in equity against Richard A. Klein and The Burke Company, alleging a breach of contract and breach of fiduciary duty by Klein and tortious interference with contractual business relations by Klein and Burke, and alleging an unlawful conspiracy by Klein and The Burke Company. The action also sought:

to enjoin immediate and irreparable harm now being suffered by Plaintiff, the HARSCO Corporation ("HARSCO"), by virtue of the employment of Defendant Richard A. Klein by one of HARSCO's major competitors, Defendant The Burke Company ("Burke"), and by Defendant Klein's communication, or threat of communication, of sensitive trade secrets to Burke, all in direct violation of covenants and duties owed by Defendants Klein and Burke to HARSCO.

On August 17, 1989, the court below entered an order granting the appellant a special injunction before a hearing was held. Following a hearing before Martin, J. the court entered an order on September 15, 1989 denying the appellant's motion for a preliminary injunction and vacating the prior order granting a temporary injunction. It is from this order that an appeal has been taken to this court.[2]

Our scope of review from an order denying a preliminary injunction is very narrow. *Temtex Products, Inc. v. Kramer*, 330 Pa.Super. 183, 479 A.2d 500 (1984). An appellate court will interfere with the decision of the chancellor only if it is clear that no grounds exist to support the decree or that the rule of law relied upon was patently

2. An appeal may be taken as of right from an order denying an injunction. Pa. R.A.P. 311(a)(4).

erroneous or misapplied. *Intraworld, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316 (1975). "In order to sustain a preliminary injunction, the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted." *Zebra v. Pittsburgh School District,* 449 Pa. 432, 437, 296 A.2d 748, 750 (1972). *See also, Bell Fuel Corp. v. Cattolico,* 375 Pa.Super. 238, 544 A.2d 450 (1988); appeal denied by *Bell Fuel Corp. v. Cattolico,* 520 Pa. 612, 554 A.2d 505 (1989).

The Supreme Court noted in *Hospital Association v. Commonwealth, Department of Public Welfare,* 495 Pa. 225, 233–4, 433 A.2d 450, 454 (1981):

"[A] preliminary injunction is somewhat like a judgment and execution before trial ..." *Herman v. Dixon,* 393 Pa. 33, 36, 141 A.2d 576, 577 (1958). Thus, although an application for such relief is addressed to a court's equitable discretion, the relief should issue only where

"there is an urgent necessity to avoid injury which cannot be compensated for by damages and should never be awarded except when the rights of the plaintiff are clear. Also, it should in no event ever be issued unless greater injury will be done by refusing it than in granting it."

*Id.,* 393 Pa. at 36–37, 141 A.2d at 577.

. . . . .

Despite these stringent standards, a party seeking appellate relief from a decree granting (or refusing) a preliminary injunction, instead of "waiting for a final determination on the merits," incurs what has been termed an "additional burden." *Parker v. Philadelphia,* 391 Pa. 242, 247, 137 A.2d 343, 346 (1958).

■ Our task is to scan the record to determine if the denial of the appellant's request for preliminary injunction was based upon apparently reasonable grounds. We are guided in our determination of the existence of reasonable grounds for denying the injunction by the rule that the

plaintiff must satisfy the following rigorous standards before an injunction may issue: (1) it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; (2) greater injury would result by refusing it than by granting it; (3) it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct; and (4) the activity sought to be restrained is actionable and an injunction is reasonably suited to abate that activity. *Blair Design and Construction Co. v. Kalimon,* 366 Pa.Super. 194, 530 A.2d 1357 (1987).

■ The court below properly refused to issue a preliminary injunction. The court determined, *inter alia,* that there was no likelihood of immediate irreparable harm to Harsco Corporation by refusing the injunction. Mr. Klein was the sales manager of a large company dealing in products and services used in the building industry. The record does not indicate any uniqueness in Patent Scaffolding's product or services that could be characterized as confidential in nature. While Mr. Klein was national sales manager when he resigned from Patent Scaffolding, he was not at that time dealing directly with customers and in any event, the customers in the building trade would be generally known to all of the firms in the same business as the appellant.

*Rollins Protective Services v. Shaffer Co.,* 383 Pa.Super. 598, 557 A.2d 413 (1989) involved an employment contract which contained a restrictive covenant prohibiting the defendant from engaging in competitive employment for two years within a fity-mile radius of Pittsburgh in the event he left the plaintiff's employment. The defendant terminated his employment and accepted a position with a competing security company. The chancellor found the employment contract to be valid but refused to issue a preliminary injunction as there was no proof of irreparable harm. The record established that the employer had not "stolen" Rollins' customers and had not knowingly solicited Rollins' customers. We affirmed, holding that the appellant failed

to prove any harm resulting from violation of the non-competition clause of the employment agreement. Del Sole, J. filed a concurring opinion setting forth his view that before a preliminary injunction may issue there must be actual proof of irreparable harm.

The appellant relies on *Boykins v. City of Reading,* 128 Pa.Cmwlth. 154, 562 A.2d 1027 (1989) to support its view that the court below based its decision on a palpable error of law. In *Boykins,* the owners and operators of a club in Reading, sought to enjoin the City of Reading, the mayor and chief of police from enforcing a local ordinance. The court below refused to issue the injunction on the grounds that the plaintiffs had not shown irreparable harm which could not be compensated by damages. The Commonwealth Court overruled the court below as it overlooked the Political Subdivision Tort Claims Act[3] which granted immunity to the city, mayor and chief. In the instant case, monetary damages to the appellant are not precluded. Although we hold that the appellant is not entitled to a preliminary injunction, we do not reach the question of the validity of the employment contract or the issues of tortious misconduct by the appellees.[4]

■ The appellant stresses that it had a protectable and legitimate business interest in the non-competition agreement which it claims was enforceable by a preliminary injunction. In *Boldt Machinery & Tools, Inc. v. Wallace,* 469 Pa. 504, 366 A.2d 902 (1976), on which the appellant relies, Mr. Boldt sought to restrain competition from a former salesman who had agreed not to sell similar goods in

---

**3.** 42 Pa.C.S. §§ 8541 and 8546.

**4.** Appellees, in their brief, make several references to the alleged invalidity of the restrictive employment contract because of lack of consideration. Without deciding the issue, it appears that the contract containing the restrictive covenant is *prima facie* valid. The fact that it was not signed until a few days after Mr. Klein started to work for Patent Scaffolding in July, 1970, does not *per se* make it invalid for lack of consideration. The Supreme Court has held that an employment contract containing covenants not to compete signed a few days after employment commences, may be ancillary to the underlying employment contract and valid. *Beneficial Finance Co. of Lebanon v. Becker,* 422 Pa. 531, 222 A.2d 873 (1966).

the same territory during a period of five years after his separation from Boldt. Shortly after his separation, defendant went to work for a competitor selling similar goods in the territory. The court below enjoined the defendant's conduct in violation of his promise not to compete. In affirming the order, the Supreme Court held that the restrictive covenant was to be interpreted "in light of its obvious purpose, the protection of Boldt against loss of customers and business as a result of Wallace's efforts on behalf of another seller of industrial machinery." 469 Pa. at 511, 366 A.2d at 905. *See also, Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976).

Even if it were established that the appellant had a legitimate business interest to protect, all four factors must coalesce before a court is justified in issuing a preliminary injunction. *Rollins Protective Services Co. v. Shaffer Co., supra.* Clearly, in the matter before us, there was absent the essential factor of irreparable damages. There were reasonable grounds for refusal to issue the injunction and we will not interfere with the court's exercise of discretion.

One final word must be directed to the appellant's arguments that the court below erred in failing to acknowledge Klein's common-law fiduciary duty to Harsco Corporation and The Burke Company's common-law duty not to interfere with the contractual relationship between Harsco Corporation and Richard A. Klein. We point out that any causes of action based on alleged violations of duty by the appellees continue. It remains to be adjudicated whether Klein has violated his employment contract or whether The Burke Company has tortiously interfered with the contractual relationship between Harsco Corporation and Klein.[5]

5. It appears that when The Burke Company hired Mr. Klein, it was fully aware of the contractual relationship between Harsco Corporation and Mr. Klein, as The Burke Company agreed in its employment contract with Klein:

It is understood by Burke Scaffolding, Inc. that there may be difficulty caused by your present employer relevant to a restrictive employment covenant that you have signed. In the event that legal actions are taken against you because of this covenant, Burke Scaffolding will underwrite all costs of defending your actions and

In reviewing the refusal to issue a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any reasonable grounds for the action of the court below. *Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 479 A.2d 452 (1984).

Order affirmed.

our own. You shall be held harmless of any consequence of such actions, and the terms of this employment agreement shall apply regardless of any adverse outcome of such actions.